Wheeler, D. J.
This suit is brought upon letters patent No. 57,057, dated August 7, 1866, issued to James Gresham for an improvement in injectors for boilers, and now owned by the plaintiffs. The questions raised and relied upon in argument relate principally to the novelty of the invention described in the patent.
The invention purports to be of an improvement upon an apparatus known as Gifford’s Injectors, patented to Henry J. Gifford by letters patent of Great Britain, No. 1,665, dated July 23, 1858.
The defendant sets up these letters patent to Gifford; and letters patent of Great Britain, No. 2,775, granted to Andrew Barclay and Alexander Morton, dated November 7, 1863; and No. 1,151, granted to Andrew Barclay, dated May 6,1864, *226 each for improvements in certain apparatus for injecting and ejecting fluids, to defeat the plaintiff’s patent.
Gifford’s injector underlies all these inventions. When once started it seems to have been all or nearly all that was desirable for forcing water into boilers; but in starting it would not, of itself, raise the water from any considerable depth, to force it into the boilers. Where the water had to be so raised, before being forced it was necessary to first prime the injector with water by some outside means, and then, when started, it would continue to both raise and force the water. His patent provided for an additional jet of steam, coming in and striking the principal column of steam and water after it had passed the overflow in its course towards the boiler, and aiding in forcing the column along; but this jet merely aided the injector as such, after it was started, and did nothing of itself towards removing the difficulty of starting when the water had to be raised.
Barclay and Morton, in their patent, described peculiar shaped chambers to change the direction of, and facilitate the flow of, the fluids after they had passed the injecting apparatus, but described nothing for raising them to the apparatus, and added: “It may be necessary to combine two of the before mentioned apparatuses, so that the one may merely raise or lift the water or other fluids, whilst the other then merely forces it; and also one lifting apparatus may be combined with that known as Gifford’s Injector, and by this means supply water to steam-boilers from any depth where an ordinary lift-pump is required.”
Barclay’s patent described an injector into which a column of cold fluid could be brought when that to be injected was too warm to condense the steam sufficiently, and which took the water and steam through alternate concentric annular passages to combine them, to make the combination of them more perfect and the apparatus more effective; but it described no means for priming the injector in order to start it to drawing fluids from low depths and injecting them.
Means for raising fluids into open vessels, or discharging them into open air, by throwing a jet of steam past the upper *227 end of a tube leading from the fluid upward, out into a larger descending nozzle, making an apparatus in the nature of a siphon operated by steam, were well known. Gresham contrived means for throwing a jet of steam past the end of the passage for water from the reservoir to the overflow opening of a Gifford, or other injector, at that opening, into such a nozzle arranged there, so as to draw water from the reservoir to the overflow and prime the injector, ready for starting, to raise water and force it into the boiler.
His patent is, and purports to be, for the mechanical devices by which this is accomplished, and does not rest at all upon the discovery of any of the principles of philosophy employed in its accomplishment. Neither Gifford, nor Barclay and Morton, nor Barclay, described in their patents any such devices; nor does it appear that they, or any one else, ever knew of or used any such before Gresham’s invention. Barclay and Morton suggested in their patent, in the part quoted, that one lifting apparatus might be combined with a Gifford injector, and by that means supply water to steam boilers from depths where lift pumps were required; but they did not suggest, in that immediate connection, what sort of a lifting apparatus. Probably they meant, and are to be understood as having meant, such lifting apparatus as they had before described in other parts of their patent. Such apparatus would not be at all like Gresham’s, nor could it be employed for the same purpose as Gresham’s, namely, to raise water, before starting the injector, to prime it.
All injectors will, in starting, draw water upwards to some extent, but not much when they have the injector apparatus only. Whatever they do draw they draw upon a similar principle to that upon which Gresham’s lifting apparatus works. They to that extent lift water, and his lifts water; still, they cannot lift to the extent his does. They do not do it by the same mechanical means that his does, nor do they employ all the philosophical principles that his does. His jet of steam works in a nozzle which is the reverse of theirs; his projecting into a nozzle increasing in size, which increases *228 the vacuum and power of suction, and theirs into one decreasing in size, which increases the power of projection.
If Barclay and Morton’s patent could he said to suggest the combination of any lifting apparatus other than that mentioned in other parts of their patent with a Gifford injector, it does not show any such, nor any mode of combining them.
A patent or printed publication must, in order to defeat a patent for an invention subsequently obtained, describe the invention so as to enable those skilled in the art to which it belongs or most nearly appertains to construct and use it. This patent gives no information as to how a lifting apparatus can be combined with a Gifford injector. It merely says that this may be done, but leaves others to invent the mode of doing it. Gresham invented a mode which their suggestion in no way anticipates or defeats.
The defendant uses injectors constructed according to the specification of letters patent No. 138,198, dated April 22, 1873, and granted to Samuel Rue, Jr., for an improvement in injectors for steam generators. There is no fair question upon the evidence, and it is not claimed by counsel in argument, but that these injectors contain substantially the same devices, operating in substantially the same manner, as Gresham’s. They contain additional devices, and are perhaps improvements upon his; but that does not carry with it any right to make use of his devices, and it is not claimed that it does. Both Gresham and Rue have made improvemements upon injectors, and each became entitled to the improvements he made, and to his own form of machine, so far as it should not include parts belonging to others. But Gresham preceded Rue, and the latter could acquire no rights to the devices of the former, which he included in his form of machine. Railway Co. v. Sayles, 97 U. S. 354.
The case shows that letters patent of Great Britain, No. 410, dated February 14, 1865, were issued to Gresham for the same invention. Whether there was any other date of issue to that patent does not appear. As the case stands now that must be taken to be the date of issue; and accord *229 ing to De Florez v. Reynolds, S. D. N. Y. February, 1880, this patent will run 17 years from that date only. An injunction issued in pursuance of a final decree should, by its terms, be limited to the time it may properly remain in force; and an injunction to restrain infringement of a patent can, of course, properly continue only during the term of the patent. No question as to this has been made by counsel, and it i» not intended to conclude any question that might be made by what is here said. It seems most proper now that the injunction should issue for the remainder of the term as it now appears, which is for 17 years from February 14, 1865, leaving the parties to move further in respect to it as they may be advised.
Let there be a decree for an injunction, and an account accordingly, with costs.