### PACKET COMPANY *v.* SICKLES.

1. Whilst the right to plead the statute of limitations is no more within the discretion of the court than other pleas, when the refusal of the court to permit that plea to be filed is based on the allegation that it is not filed within the time prescribed by the rules of practice adopted in that court, it is necessary that the party excepting to the refusal shall incorporate the rule in his bill of exceptions, or this court will presume that the court below construed correctly its own rules.
2. Such rules are indispensable to the dispatch of business and the orderly administration of justice, and it must be presumed that the court below is familiar with the construction and course of practice under them.
3 The rule of damages in actions at law for infringement of the rights of patentees has long been established in this court to be the customary

price at which the patentee has licensed the use of his invention, where a sufficient number of licenses or sales have been made to establish a market value.

4. The reason for this rule is still stronger when the use of the patented invention has been with the consent of the patentee, express or implied, without any rate of compensation fixed by the parties.

ERROR to the Supreme Court of the District of Columbia.

This suit was part of a litigation of twenty-five years' standing, which was now in this court for the fourth time.

The controversy arose out of the use by the defendants below of an improvement in the steam-engine known as the Sickles cut-off, an apparatus for lifting and tripping the valves of steam-engines, and also an improved water reservoir and plunger, for which F. E. Sickles, one of the plaintiffs, had, on the 20th May, 1842, received a patent.

All the trials in the court below previous to the one under review had been founded on a special count, the substantial allegations of which were that after an experiment to ascertain the saving in fuel due to the use of the patented invention, the defendants would pay to the plaintiffs three-fourths of the value of said saving of fuel during the existence of the patent, if the vessel on which it was to be used should last so long. Very large savings were proved to the satisfaction of juries, and several heavy verdicts and judgments rendered, which were reversed on different grounds in this court. The last of these reversals was in the present case, and is reported in 5th Wallace, 580.

It was there held that this special contract, on which the case had always been previously tried, was void under the statute of frauds, because it was not to be performed within one year and was not in writing. This was in 1867, and the case being remanded, the plaintiffs, by leave of the court, filed, on 4th March, 1868, the following amendment to the declaration:

"The plaintiffs sue the defendants for money payable to the plaintiffs, for the use of a certain apparatus patented by one F. E. Sickles on the 20th day of May, 1842, for lifting and tripping

the valves of steam-engines, and also an improved water reservoir and plunger.

"And the plaintiffs sue the defendant for money received by the defendant for the plaintiffs; and the plaintiffs claim $25,000."

To this the defendants, on the 1st day of March, 1871, three years afterwards, without leave of the court, filed a plea of non-assumpsit, and two pleas of the statute of limitations. On motion of the plaintiffs the two latter pleas were stricken from the files, on the ground that not having been filed within time, *according to the rules of the court*, the court would, in furtherance of the ends of justice, refuse to permit them to stand as part of the issue to be tried.

The defendants excepted; but whether their exception exhibited to this court in the full, clear, and regular way in which, according to immemorial practice, it was proper to exhibit it, the action of the court below, which they wanted to bring here, was not so clear. The bill of exceptions, signed by the judge and sealed, ran in this way; the rule of court which it was said that the defendant had violated, not being incorporated into the exception, but appearing (just as it appears on the page of this volume) in a *footnote* on the page in the printed transcript; leaving it open, of course, to a question who put it on the record or transcript, though not the least question of that sort was made, at any time, in this case.

"Deposition of Thomas Worthington was read, and it was shown to the court that a copy of the amended declaration was served on the attorney of the defendant, but without the notice to plead required by the rule of court No. 15,* and was as follows: [The exception then set out the amended declaration in the words already above given.] Nor was any rule to plead, laid

---

* RULE 15. A notice to plead shall be subscribed to every declaration in the following form:

"The defendant is to plead hereto on or before the first special term of the court occurring twenty days after service hereof; otherwise judgment. P. Q. attorney for plaintiff."

Except this notice to plead, subscribed to the declaration, no rule to plead or demand of plea shall be necessary.

in the cause after the amended declaration. Therefore the court ordered that the second and third pleas be stricken out; to which ruling the defendant excepts and prays the court to sign, seal, and cause to be enrolled this its first bill of exceptions, which is done accordingly, this 2d of March, 1871."

These pleas of the statute being struck out, the case was tried on the plea of non-assumpsit.

The plaintiff, under objection by the defendant, proved his special contract, how much fuel had been saved by the use of his apparatus, and how long the defendant used it. The defendant excepted to this proof.

The defendant gave evidence to show every sale made during the existence of the patent, of the license to use the patent on board of different boats; and that the patent fee charged to licensees under said sales, which were numerous, ranged from $250 to $1500, but, on no occasion, exceeded the latter sum; and further, that the owners of the patent did not keep the patent-right off the market, but, on the contrary, availed of all opportunities offered of disposing of licenses to use the patent.

The defendant, in substance, asked the court to charge,

"That the measure of damages was the established rate for the license to use their invention, as ascertained by the sales made by plaintiff of such license to others."

The court refused thus to charge, and charged thus:

"In estimating the amount which the plaintiff is entitled to recover, the jury will take into consideration the value of the use of this machine, as far as the proof enables them to ascertain its value from the sale of the machine itself, from the license of its use, from the capacity of the machine to economize the expenditure of fuel, in the expression of the power of the engine, and from any other testimony that they may find developed in the case bearing upon the value of its use; the conclusion of value not to be confined to the price of the patent when sold, the license for its use, or the value of its economies, but to be a deduction from all, under the rule of equity and justice between parties dealing with each other in contract, and where it is expected that both are to derive advantages from their dealings."

To the refusal and to the charge exceptions were taken.

The jury found a verdict of $11,333 with interest, from the day when the suit was brought, December 11th, 1855, to the day when the verdict was rendered, March 15th, 1871.

The case was now here on exceptions; errors among others being assigned:

In striking out the pleas of the statute of limitations.

In admitting evidence to show the saving qualities of the Sickles apparatus, as compared with others, whose merits were not shown.

In refusing to instruct the jury as requested that, in an action for the use of a patented machine, the measure of damages is the license fee or what others pay for the same use about the same time.

And in charging the jury in respect of damages as it did.

*Messrs. T. J. D. Fuller and W. D. Davidge, for the plaintiff in error; Messrs. J. H. Bradley and E. N. Dickerson, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The ruling of the court below, in striking out the two pleas of the statute of limitations, is the ground of the first exception and of one of the assignment of errors.

The rule of that court is not made a part of the bill of exceptions. What purports to be a rule on the general subject of notice to plead is put at the bottom of the page in a note, a mode of making up records on writs of error which is quite novel. What these rules are cannot be judicially noticed by this court, and we are much embarrassed as to the effect of the reference to those rules in the bill of exceptions. The right to plead the statute of limitations, like any other defence, does not depend on the pleasure or discretion of the court. And if the action of the court was rested solely on that ground we should have no hesitation in reversing it. But there are other considerations to be weighed. The right of a court to prescribe rules to regulate the time and manner of filing pleas is beyond question, if they are reasonable, and

such rules are indispensable to the dispatch of business and the orderly administration of justice.

When in a bill of exceptions the court places its action on such rules, with the construction of which, and the course of practice under them, it must be familiar, it would seem that the party assigning error on such rulings should be bound to exhibit in his bill of exceptions so much of the rule or rules as affects the question. No little weight is added to these views by the fact that the defendants did not file their pleas until three years after the filing of the amended declaration, to which they were answers, and until the day before the case was tried by the jury. In addition to this, while it may be true that the amended declaration, as a general rule, is to be taken as the commencement of the suit, in reference to the defence of the statute, it may be doubted whether in this particular case, where, after years of fierce litigation, only a common count is added, which is intended to cover the same subject-matter, justice will be promoted by allowing this plea, which can only be valid by reason of the time elapsed pending the litigation. On the whole we do not think, as the case appears before us, that the exception is well taken.

The case went to trial on the plea of non-assumpsit to the amended declaration. Evidence was admitted, to which defendants excepted, proving the special contract, the value of the saving in fuel made by the use of the patented improvement, and the length of time it was in use by defendants. Evidence was also given by defendants that the plaintiffs had sold a great many licenses for the use of the patent on steamboats, that the patent fees were numerous, and ranged from $250 to $1500 for the use of the patent during its existence, and that though they had produced evidence of all the sales made of licenses for the use of the patent on steamboats during its existence, the fee in no case exceeded the latter sum. Notwithstanding this testimony, which seems to have been uncontradicted, the verdict of the jury and the judgment of the court was for $11,333, with interest from the date of the commencement of the suit.

The defendants in various forms prayed the court to instruct the jury that the measure of damages was the established rate for the license to use their invention, as ascertained by the sales made by plaintiffs of such license to others. If this was the true rule of estimating the damage the bill of exceptions shows that a sufficient number of such licenses, and the prices at which they were granted, were in evidence to enable the jury to apply the principle to the case before them.

And we are of opinion that this was the sound rule, and that in refusing the prayers for instruction based on it, as well as in admitting evidence of the saving of fuel and its value as affecting the amount of the verdict, the court below was in error. And the same error is to be found in the charge of the court to the jury on that subject.

In the case of *Seymour* v. *McCormick*,* this court, on full consideration, and without dissent, laid down the proposition that in suits at law for infringement of patents, where the sale of licenses by the patentee had been sufficient to establish a price for such licenses, that price should be taken as the measure of his damages against the infringer. The rule thus declared has remained the established criterion of damages in cases to which it was applicable ever since.†

"In cases where there is no established patent or license fee in the case," says the court in the *Suffolk Company* v. *Hayden*, "or even an approximation to it, general evidence must necessarily be resorted to."

In the case of *Seymour* v. *McCormick*, a charge very similar to the one given in the present case was held erroneous and the principles we have stated established.

The rule in suits in equity, of ascertaining by a reference to a master the profits which the defendant has made by the use of the plaintiff's invention, stands on a different principle. It is that of converting the infringer into a trustee for the patentee as regards the profits thus made; and the

---

* 16 Howard, 480.

† Sickels *v.* Borden, 4 Blatchford, 14; The Suffolk Company *v.* Hayden, 3 Wallace, 315; Livingston *v.* Jones, 3 Wallace, Jr., 330.

adjustment of these profits is subject to all the equitable considerations which are necessary to do complete justice between the parties, many of which would be inappropriate in a trial by jury. With these corrective powers in the hands of the chancellor, the rule of assuming profits as the groundwork for estimating the compensation due from the infringer to the patentee has produced results calculated to suggest distrust of its universal application even in courts of equity.

Certainly any unnecessary relaxation of the rule we have laid down in cases at law, where the patentee has been in the habit of selling his invention or license to use it, so that a fair deduction can be made as to the value which he and those using it have established for it, does not commend itself to our judgment, nor is it encouraged by our experience.

If such be the proper rule in case of the infringer who uses the invention without license and against the consent of the owner, it should not be harsher against the party who uses it with consent of the owner, express or implied, but without any agreement as to the rate of compensation. In such case nothing can be more reasonable than that the price fixed by the patentee for the use of his invention, in his dealings with others, and submitted to by them before using it, should govern.

The case was tried in the court below upon an entirely different theory, against the steady remonstrance and exceptions of the defendants.

With the special contract eliminated from the case, it seems to us to be a very simple one. The defendants have used, or are charged with using, the invention of plaintiffs, with their consent, until the expiration of the patent. If this is proven to the satisfaction of the jury, the plaintiffs have furnished the rule which must measure their compensation, in the prices at which they have sold the same privilege to others, and they must be bound by it.

JUDGMENT REVERSED, with directions to order

A NEW TRIAL.