## CASSIDY v. HUNT.

(Circuit Court, N. D. California. March 2, 1896.)

No. 11,780.

1. PATENTS—VALIDITY—FRUIT-DRYING APPARATUS.
   The Cassidy patent, No. 172,608, for improvements in fruit-drying apparatus, is valid. Packing Co. v. Cassiday, 12 C. C. A. 316, 64 Fed. 585, followed.

2. SAME—DAMAGES FOR INFRINGEMENT—ACTIONS AT LAW.
   In actions at law, plaintiff's damages, and not defendant's profits, are the measure of the recovery. If an established royalty is shown, this is usually taken as the measure of damages. But, if there is no established royalty, the jury (or the court, where a jury is waived) may consider what would be a reasonable royalty; and in determining this may consider the utility and advantage of the invention over the old methods and devices, and, as one of the elements, may take into account the profits made by defendants by the infringement. Packing Co. v. Cassiday, 12 C. C. A. 316, 64 Fed. 585, followed. Coupe v. Royer, 15 Sup. Ct. 199, 155 U. S. 565, explained.

This was an action at law by John W. Cassidy against W. J. Hunt for infringement of letters patent No. 172,608, issued January 27, 1876, to plaintiff, for improvements in fruit-drying apparatus. The case was submitted to the court without a jury.

John N. Miller, for plaintiff.
Wheaton, Kalloch & Kierce, for defendant.

McKENNA, Circuit Judge. There are two propositions submitted for decision,—the patentability of plaintiff's device, and the measure of damages. This case is one of a series against certain defendants, and on the authority of Packing Co. v. Cassidy, 3 C. C. A. 525, 53 Fed. 257, and the presumption attributable to the patent, which I do not think the evidence of defendant overcomes, patentability must be affirmed.

The question of damages has given me more trouble. Indeed, it is a very serious one. I find myself confronted by what are claimed as conflicting authorities,—a decision of the court of appeals of this circuit, and a decision of the supreme court of the United States. The latter, of course, must prevail if it is antagonistic to the other. Whether it is or not depends upon its interpretation, and to interpret it a review of prior decisions becomes necessary. But before undertaking it I will state the point in contention explicitly. As I have said, this case is one of a series against certain defendants. In the case of Same Plaintiff v. Packing Co. the testimony showed no established royalty, and I instructed the jury as follows:

"But you have a right to consider what would have been a reasonable royalty for the defendant to have paid, and fix the damages at that sum. In determining this point, you must consider all the facts of the case, and the utility and advantage of the invention over the old modes or devices which had been used at the time of the infringement for working out similar results, if the evidence shows such utility and advantage."

The instruction was affirmed by the court of appeals. 12 C. C. A. 316, 64 Fed. 585. It seems from the comments of the court that counsel for defendant did not contest the principle that what would be a reasonable royalty could be shown, only that the evidence in the case did not show it. In the case at bar counsel cites Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 200, against the principle, and antagonizes by the decision the circuit court of appeals at all points. The action was at law, and Justice Shiras, speaking for the court, said:

"The plaintiffs describe their invention as a new and improved machine for converting raw hides into leather of that class which is used for belting, lacings, and other purposes where it is necessary to preserve the native strength and toughness without destroying or impairing the natural fibers or grain of the leather."

### The evidence was stated as follows:

"The evidence upon which the plaintiffs relied tended to show that the defendants had treated, upon their own machines, sixty-six thousand hides. They also called Herman Royer, one of the plaintiffs, who testified that in his opinion there would be a saving of $4 or $5 a hide by using his machine over what it would cost to soften hides by any other method, and that he knew that the difference between the cost of softening the raw hide by mechanical action in his machine and doing the same work by hand or by any other devices known would be more than one dollar a hide. This was all the evidence offered on the subject by the plaintiffs. The defendant Coupe testified that there was no advantage in the use of the plaintiff's mechanism, and that he would not take such a machine as a gift. Upon this evidence the court instructed the jury as follows: 'The course taken by the plaintiffs to show the amount of damages is a proper course. They undertake to show the value of this invention to any person using it, and the law deems it a fair inference that whatever value has been received by the defendants through the use of this invention, so much has been taken from the plaintiffs, and they are entitled to have it restored to them. Upon the amount of those damages you have the testimony, if I remember right, of only one witness. Mr. Royer himself has made an estimation, as he states, of the amount of money which would be saved by the use of this particular mechanism for the performance of this particular operation in the course of the production of rawhide leather. * * * If you believe his testimony to be sound, and in accordance with the truth, then you may make up your verdict on that basis; that being, I think, the only testimony in the case as to the amount of damages.' "

### The learned justice then said:

"We cannot approve of this instruction, which we think overlooked the established law on the subject. The topic is one upon which there has been some confusion, and perhaps some variance in the cases. But recent discussion has cleared the subject up, and the true rules have become well settled. There is a difference between the measure of recovery in equity and that applicable in an action at law. In equity the complainant is entitled to recover such gains and profits as have been made by the infringer from the unlawful use of the invention, and, since the act of July 8, 1870, in cases where the injury sustained by the infringement is plainly greater than the aggregate of what was made by the defendant, the complainant is entitled to recover the damages he has sustained, in addition to the profits received. At law the plaintiff is entitled to recover as damages compensation for the pecuniary loss he has suffered from the infringement, without regard to the question whether the defendant has gained or lost by his unlawful acts; the measure of recovery in such cases being not what the defendant has gained, but what plaintiff has lost. As the case in hand is one at law, it is not necessary to pursue the subject of the extent of the equitable remedy; but reference may be had to Tilghman v. Proctor, 125 U. S. 137, 8 Sup. Ct. 894, where the cases were elaborately considered, and the rule above stated was declared

to be established. `*  *· *` It is evident, therefore, that the learned judge applied the wrong standard in instructing the jury that they should find· what the defendants might be shown to have gained from the use of the patented invention. `* * *` Upon this state of facts, the evidence disclosing the existence of no license fee, no impairment of the plaintiffs' market, in short, no damages of any kind, we think the court should have instructed the jury, if they found for the plaintiff at all, to find nominal damages only."

I have quoted from the case at length, so as better to compare it with prior cases. The purpose of an action at law is to recover the plaintiff's loss, and the measure of recovery is the plaintiff's loss. This is the principle. This loss, therefore, becomes the chief inquiry. By what rule is it ascertained? There may be direct evidence of it or indirect evidence. See Rob. Pat. §§ 1061, 1062. As examples of indirect evidence, the author mentions profits of the defendant, and his deduction from the cases is that such profits may be considered by the jury. Burdell v. Denig, 92 U. S. 720, was an action at law, and Justice Miller, speaking for the court, distinguished the measure of damages in an action at law from that in equity, as follows:

"First. In cases where profits are the proper measure, it is the profits which the infringer makes, or ought to make, which govern, and not the profits which plaintiff can show that he might have made. Second. Profits are not the primary or true criterion of damages for infringement in an action at law. That rule applies eminently and mainly to cases in equity; and is based upon the idea that the infringer shall be converted into a trustee, as to those profits, for the owner of. the patent which he infringes,—a principle which it is very difficult to apply in a trial before a jury, but quite appropriate on a reference to a master, who can examine ·defendant's books and papers, and examine him on oath, as well as all his clerks and employés. On the other hand, we have repeatedly held that sales of licenses of machines, or of a royalty established, constitute the primary and true criterion of damages is the action at law."

But the learned justice added:

"No doubt, in the absence of satisfactory evidence of either class in the forum to which it is most appropriate, the other may be resorted to as one of the elements on which the damages or the compensation may be ascertained; but it cannot be admitted, as the prayer which was refused implies, that in an action at law the profits which the other party might have made is the primary or controlling measure of damages. Packett Co. v. Sickles. 19 Wall. 617."

Packett Co. v. Sickles was also an action at law, and, the evidence showing a great many licenses for the use of the patent, it was held that the rate of license was the measure of damages. But the court quoted Suffolk Co. v. Hayden, 3 Wall. 315, for approval of the rule that, there being no license fee, general evidence could be resorted to. The case was one at law, and a statement of the general evidence was as follows:

"It appeared that no sales had been made of the patent right by the plaintiff, or of licenses for the use of it, so as to establish a patent or license fee as a criterion by which to ascertain the measure of damages. The court below accordingly permitted evidence, after objection, as to the uses and advantages of this improvement over the previous methods of cleaning cotton. And an expert testified that the results were a more thorough cleaning of the cotton, the saving of all the good fibers, less damage to the staple, and freeing of the room from dust, and the machinery from dust, dirt, and sand, the. keeping of the machinery in better order at less cost, and dispensing with one

grinder of the cards in consequence of the diminution of dirt and sand, expelling fine dust and dirt not before got out, less breakage of the yarns," etc.

The action of the lower court in admitting this evidence and basing a measure on it were affirmed. Justice Nelson, speaking for the court, said:

"This question of damages, under the rule given in the statute, is always attended with difficulty and embarrassment both to the court and jury. There being no established patent or license fee in the case, in order to get at a fair measure of damages, or even an approximation to it, general evidence must necessarily be resorted to. And what evidence could be more appropriate and pertinent than that of the utility and advantage of the invention over the old modes or devices that had been used for working out similar results? With a knowledge of these benefits to the persons who have used the invention, and the extent of the use by the infringer, a jury will be in possession of material and controlling facts that may enable them, in the exercise of a sound judgment, to ascertain the damages, or, in other words, the loss to the patentee or owner, by the piracy, instead of the purchase of the use of the invention."

Philp v. Nock, 17 Wall. 460, was also an action at law. The court, by Mr. Justice Swayne, said:

"The measure of the damages to be recovered against infringers prescribed by the act of 1836 as well as by the act of 1870, is 'the actual damages sustained by the plaintiff.' Where the plaintiff has sought his profit in the form of a royalty paid by his licensees, and there are no peculiar circumstances in the case, the amount to be recovered will be regulated by that standard. If that test cannot be applied, he will be entitled to an amount which will compensate him for the injury to which he has been subjected by the piracy. In arriving at their conclusion, the profit made by the defendant and that lost by the plaintiff are among the elements which the jury may consider."

Seymour v. McCormick, 16 How. 480, is the foundation case for the rule that an established license fee is the measure of damages; but it is admitted in that case, as it was declared in the subsequent cases which I have quoted, that the profits realized by an infringer may furnish a rule. The case was at law, and there was a license fee. This, the court held, was the measure of damages, but Justice Green said:

"It is only where, from the peculiar circumstances of the case, no other rule can be found, that the defendant's profits become the criterion of the plaintiff's loss."

Of these circumstances the absence of a license fee is undoubtedly the best measure of damages. But this is as true of an action in equity as a suit at law. Clark v. Wooster, 119 U. S. 326, 7 Sup. Ct. 217. What is necessary to make an established license fee is stated in Rude v. Westcott, 130 U. S. 165, 9 Sup. Ct. 463. The rule announced by these cases is that the benefit derived by the defendant can be considered by a jury to ascertain the loss to plaintiff, and existed when Cassidy v. Packing Co. was tried, and when it was affirmed by the circuit court of appeals. As to the proof, all the cases affirm that it must be certain, not conjectural; such as a conclusion could be deduced from, not guessed at. And it was said in Seymour v. McCormick that there was no binding legal presumption that the defendant's gain was the plaintiff's loss. With these considerations we are not now concerned, our purpose be-

ing only to ascertain what elements can be admitted in considering plaintiff's damages.

This being the condition of the law, has Coupe v. Royer made any change in the law, or shown that the law was misunderstood in Cassidy v. Packing Co.? If Coupe v. Royer is antagonistic to the cases I have quoted, it is the only one which is, unless Tilghman v. Proctor and other cases in equity were intended so to be. Tilghman v. Proctor does not seem to be. In that case Justice Gray said:

"In an action at law for the infringement of a patent the plaintiff can recover a verdict for only the actual damages which he has sustained; and the amount of such royalties or license fees as he has been accustomed to receive from third persons for the use of the invention, with interest thereon from the time when they should have been paid by the defendants, is generally, though not always, taken as the measure of his damages; *but the court may, whenever the circumstances of the case appear to require it, inflict vindictive or punitive damages, by rendering judgment for not more than thrice the amount of the verdict.*"

—And then cited the cases which I have quoted. The italics in the quotation are mine, and what the words were intended to mean is ambiguous; but it is natural to construe them by the cases cited. Root v. Railway Co., 105 U. S. 189, sheds a very clear light. It was a suit in equity, and the jurisdiction of the court and the measure of relief are very fully considered. All the important cases were reviewed and estimated by Justice Mathews, and, after stating the reason and extent of the rule allowing profits, he said:

"The rule itself is reasonable and just, though sometimes perverted and abused. It has been constantly acted upon by the courts. But it is a rule of administration, and not of jurisdiction; *and, although the creature of equity, it is recognized as well at law as one of the measures, though not the limit, for the recovery of damages.*" (The italics are mine.)

The letter of decision in Coupe v. Royer seems to oppose these cases. Is there no reconciliation between them? Coupe v. Royer does not purport to reverse prior cases. It assumes a rule to be well established, and it must, therefore, find its explanation in confining its language to the precise action of the lower court, which it disapproved. The lower court told the jury that it was an inference of law that what the defendant gained the plaintiff lost. This kind of instruction was condemned in Seymour v. McCormick, where the court said:

"What a patentee would have made if the infringer had not interfered with his rights is a question of fact, and not 'a judgment of law.'"

Robinson says (section 1062):

"There is no presumption, either of law or fact, that the plaintiff has lost all that the defendant has gained, or that the defendant's advantage is equal to the plaintiff's loss. But the pecuniary benefit which the defendant has derived from the unlawful use of the invention, whether by an increase in the quality of his products and the quantity of his sales, or by a decrease in the expense of manufacture, is a fact from which, in connection with other facts, the jury may infer the amount by which the plaintiff's sales and prices have been reduced through the infringement."

If the language in Coupe v. Royer be confined in its effect to the precise action of the lower court, it is not antagonistic to Cas-

sidy v. Packing Co. The latter only decides that what would be a reasonable royalty may be established by evidence. And to make this the measure of plaintiff's loss is as consistent as to make an established royalty a measure of loss. In either case, whether the defendant use the invention will depend on his judgment of its advantages over other things, and equally in either case he might or might not prefer to use such other things than to pay a price for the new one. But also in either case, to quote Judge Nelson in Packett Co. v. Sickles, supra:

"With a knowledge of these benefits [utility and advantage of the invention] to the persons who have used the invention, and the extent of the use of the infringer, a jury will be in possession of material and controlling facts that may enable them, in the exercise of a sound judgment, to ascertain the damages, or, in other words, the loss to the patentee or owner, by the piracy, instead of the purchase of the use of the invention."

See, to the same general effect, Brickill v. Mayor, etc., 8 C. C. A. 500, 60 Fed. 98. If the facts in Cassidy v. Packing Co. were sufficient to establish a reasonable royalty, the facts of the case at bar, being substantially the same, are sufficient. The decision goes no further.

The amount of royalty and the time it is to be applied are open questions. I will not dwell on them at length, as this opinion is already very long. It is enough to say that the evidence justifies the amount being fixed at $100 for the term of the patent. The defendant used five machines for $9\frac{1}{2}$ years,—that is, for nine and one half seventeenths of the term of the patent,—and hence, as the time for which the patent is to endure is one of the chief elements of its value (Bloomer v. McQuewan, 14 How. 328), damages are awarded according to this time.