TRIPLEX SAFETY GLASS CO. OF NORTH AMERICA v. DUPLATE CORPORATION et al.

No. 2295.

District Court, W. D. Pennsylvania.

May 1, 1934.

Brown, Critchlow & Flick, of Pittsburgh, Pa., for plaintiff.

Marshall A. Christy and Smith, Buchanan, Scott & Gordon, all of Pittsburgh, Pa., for defendants.

G. D. Shrum, of Pittsburgh, Pa., special master.

SCHOONMAKER, District Judge.

This case now comes to the court: (1) On exceptions to the final report of the master, G. Dixon Shrum, Esq., appointed to take and state an account of the profits derived and the damages sustained by the plaintiff by reason of infringements by defendants of letters patent 1,182,739, for the manufacture

of strengthened glass; (2) on the motion of the plaintiff to assess interest on the damages allowed; and (3) on the plaintiff's motion to assess against the defendants the cost of reference to the special master.

Two decrees were entered in this case: One on December 9, 1929, against the defendant Duplate Corporation, the original defendant in this suit for the infringement of the patent; and the other on December 5, 1931, against the Duplate Corporation and the Pittsburgh Plate Glass Company, the latter company being brought into the case on supplemental bill charging the Pittsburgh Plate Glass Company to be a contributory infringer.

This decree of December 5, 1931, held that both defendants were jointly and severally liable to account for the costs, profits, and damages arising from infringement of this patent.

The master found that the defendants had received no profits out of the manufacture and sale of infringing glass, showing by Appendix B attached to his report under heading "Statement of Account Per Finding of Special Master," a net loss to the defendants on the sale of infringing glass of $276,857.47. The master did find, however, that the plaintiff had suffered damage, and assessed the same on the basis of a royalty of 10 cents per square foot on the infringing laminated glass, the total amount being $414,120.70. In addition to that, the master found that the plaintiff had suffered damage in the sum of $2,807.89 due to price reductions forced upon the plaintiff by the infringement of the patent in suit. This makes the total award of damage $416,928.-59.

Both the plaintiff and the defendants have filed exceptions to this report.

■ The plaintiff's exceptions are forty-three in number. The defendants have moved to dismiss them, because it is alleged that they do not conform to the proper equity practice, in that they are general assignments of error without specific reference to what the master should have found in lieu of the findings complained of.

The exceptions, as filed by the plaintiff, do not seem to meet the requirement laid down by the Supreme Court in Sheffield & Birmingham Coal, Iron & Railway Co. v. Gordon, 151 U. S. 285, 289, 291, 14 S. Ct. 343, 38 L. Ed. 164. But as plaintiff's counsel in their argument in support of these exceptions largely raise only questions of law as to the proper method of computation of the profits and loss and of damages arising out of the sale of infringing glass, we will deny this motion to dismiss.

These forty-three exceptions filed by the plaintiff raise, as we look at it, practically three questions: (1) Are the defendants willful and deliberate infringers? (2) Did the master adopt and use in his statement of profits on the sale of infringing glass a proper basis for computing the cost of manufacture and the deductions that the defendants should be permitted to make in computing profits? (3) Did the master correctly compute the general damages awarded to the plaintiff.

The defendants' exceptions are twelve in number, and relate largely to the damage items awarded to the plaintiff, it being the contention of the defendants that the evidence in this case before the special master would only justify the award of nominal damages.

■ The question of wanton and deliberate infringement we must resolve in favor of the defendants. It appears by the evidence that the defendants had notice of the plaintiff's patent and took the advice of legal counsel who not only examined the plaintiff's patent, but the plaintiff's process in the manufacture of laminated glass, after which defendants' counsel gave to the defendants his legal opinion that their method of manufacturing strengthened glass did not infringe the plaintiff's patent. We find nothing in the evidence which impugns the good faith of the defendants in seeking the advice of their counsel or the good faith of counsel in studying the plaintiff's process to determine whether there was infringement. In that we are satisfied that both defendants and their counsel were acting in good faith in the matter of infringement and in believing that their process did not infringe the plaintiff's patent. We conclude therefore that the defendants were not willful and deliberate infringers.

We go next to the master's computation of profits and losses. There seems to be no dispute in the case over the correctness of the computation of the amounts; there is no dispute over the correctness of the figures. The dispute is over the question of whether items deducted are properly and legally allowable as deductions from the sale price, in order to determine profits. The plaintiff's objection to these deductions allowed by the master may be grouped and discussed under the heads: (a) Comparisons of average

costs and specific selling prices; (b) factory operating losses (rejects and returns); (c) additional pyralin losses; (d) allowance for use of defendants' patents; (e) special cutting losses; (f) federal income tax; (g) selling commissions; (h) interest on investment.

**(a) Comparison of Average Costs and Specific Selling Price.** The master found that this was not a case in which it would be permissible to state an account of profits by offsetting the monthly average costs per square foot unit against the price for which the glass was sold. We agree with the master in his conclusions that the profits of the infringing sales are not to be computed in the way contended by the plaintiff. To determine truly the profits or losses, sales prices must be compared with specific costs of items of manufacture of the infringing article. The defendants were engaged in a regular and continuous business during the period of these operations in the manufacture of infringing glass. In this continuous business, the infringing glass cannot be treated separately.

We believe Judge Thomson of this court, in MacBeth Evans Glass Co. v. L. E. Smith Glass Co. (D. C.) 21 F.(2d) 553, 555, thus correctly stated the rule to be applied to infringements of this character. This opinion of Judge Thomson was approved by the Circuit Court of Appeals of this Circuit in MacBeth-Evans Glass Co. v. L. E. Smith Glass Co., 23 F.(2d) 459.

**(b) Factory-Operating Losses—(Rejects and Returns).** The master has found that a considerable amount of laminated glass had to be turned out only to be rejected or returned in order that a certain volume of perfect specimens might be sold, and has allowed these rejects and returns as operating losses unavoidably connected with the manufacture of good finished product, and as necessary elements in the cost of production of a good product. We agree with the master in his conclusion, and in so doing, we are again following Judge Thomson in the conclusion announced by him in MacBeth Evans Glass Co. v. L. E. Smith (D. C.) 21 F.(2d) 553, where Judge Thomson held in a glass lens case that credit must be given as a part of the cost of manufacture for defective lenses, loss from bad debts, discounts, and allowances reasonably incident to the business in order that the defendants be charged only with the profits actually made.

Cases cited for the plaintiff in opposition to these cases we do not think are controlling, because they hold merely that an unsold inventory at the end of the accounting period cannot be taken as a loss in the manufacturing loss in accounting. In a case where there is a series of isolated infringements, loss-producing sales cannot be deducted from profits in the accounting on the sales where there were profits made; and losses on experimental products cannot be deducted in accounting. We recognize the correctness of the rule in these cases; but we think they have no application to the facts of the instant case, where the defendants are only seeking credit for losses actually accruing, while the infringing product is being manufactured in the carrying on of a continuous business.

**(c) Additional Pyralin Losses.** The contention of the plaintiff cannot be sustained as to this item. The objection is made, as we view it, in line with the position that the defendants are entitled only to the cost of the elements entering into profitable sales. We have already pointed out, in our view of this continuous business, that such an arrangement cannot be properly made in this case, for the pyralin that was used in glass that did not turn out perfectly was as much a cost of production as any other part of the factory operation.

**(d) Allowance for Use of Patents.** The defendants, in the manufacture of laminated glass, used in their process of producing glass that entered into the laminated products, some twenty-six patents of their own. The master has made allowance in this accounting for the use of these patented processes. The plaintiff objects to this allowance, because it is urged that laminated glass is so unique that the plaintiff's patent practically contributed everything to the salability of the products, and that the defendants' patent had nothing to do with it. We have reviewed the evidence on this subject, and we are of the opinion that the master correctly ruled the case. It appears to us from the testimony that the defendants' patented process was a very large factor in the saving of manufacturing costs which would permit the sale of laminated glass in competition with other glass. During the infringing period, laminated glass was competing with ordinary plate-glass windshields, and must of course be offered to the market at a price which would make them salable in comparison with ordinary plate glass. If the defendants had been paying

royalty on these twenty-six patents that were involved in their process of manufacture, that payment, of course, would have been an allowable deduction. We can see no distinction if they themselves happened to own the patents. We believe they should be entitled to a reasonable royalty allowance on account of their patents. The findings of the master in this regard are approved by the court.

■ (e) *Special Cutting Losses.* This special cutting loss allowed by the master arose from the adjustment necessary to translate the average profit on one-eighth inch plate glass into the specific profit realized by the Pittsburgh Plate Glass Company on its sales to the Duplate Corporation, as the master found. The glass furnished by the Pittsburgh Plate Glass Company to the Duplate Corporation for the manufacture of infringing glass resulted in unusual cutting losses in view of the fact that the orders of the Duplate Corporation were confined almost entirely to windshield size. We believe the master has correctly ruled on this phase of the controversy, because of the fact that the orders from the Duplate Corporation to the Pittsburgh Plate Glass Company were for quantities of glass of one size, with the result that there were additional cutting losses in cutting glass of this size out of the original sheets. We shall confirm the master in this ruling.

■ (f) *Allowance for Federal Income Tax Actually Paid.* The plaintiff argues that the income tax actually paid by the defendants should not be allowed, because the defendants were deliberate infringers. On this objection we have already ruled that the defendants are not deliberate infringers. The next argument advanced by the plaintiff against the allowance of this item is the fact that a special cutting loss and interest on the investment were not taken into consideration in the computation of the tax. We do not think we can properly go into that. The tax actually paid, whatever the method of computation by the government, enters into the determination of profits and losses. As Judge Woolley pointed out in MacBeth-Evans Glass Co. v. L. E. Smith Glass Co. (C. C. A.) 23 F.(2d) 459, 463, a book profit is not a profit actually made when the government takes a part of it as a tax. In this allowance, we concur in the master's ruling.

■ (g) *Selling Commission.* The infringing laminated glass was sold by the defendant, the Pittsburgh Plate Glass Company, at a commission of 5 per cent. on the sales in a period up to January 1, 1929, and 3 per cent. thereafter. These commissions computed at that rate amount to $220,742.95. The plaintiff's attack on the allowance of these commissions seems to be based on the theory that the Pittsburgh Plate Glass Company and the Duplate Corporation are one and the same corporation. Therefore, the Pittsburgh Plate Glass Company should not be allowed a commission. The facts of this case, as we view it, do not show that situation. The Duplate Corporation was the corporation engaged in the manufacture of this laminated glass. The glass that entered into the product was furnished by the Pittsburgh Plate Glass Company, which owned 50 per cent. of the capital stock of the Duplate Corporation. The DuPont Viscoloid Company furnished the pyralin that entered into the laminated product, and owned 50 per cent. of the capital stock of the Duplate Corporation. The Pittsburgh Plate Glass Company sold the finished laminated product, and were very properly allowed the commission for that service. The amount seems to be reasonable, and the selling cost, we think, was a proper item entering into the computation of profits. If there were other sales agents, they would have had to spend that amount at least in the sale of the laminated profits. We shall approve the master's allowance.

■ (h) *Interest on Investment.* The question here involved is whether or not under the facts of this case the master was correct in his conclusions of law to the effect that the defendants are entitled to allowance for interest on investment. We think the facts of this case do not justify us in holding that the defendants have forfeited the right to interest on the investment. They were not deliberate infringers; and we believe that under the ruling authorities they are entitled to a reduction of profits by allowance of interest on invested capital. We confirm the master's ruling in this regard.

This disposes of all the objections and exceptions made by the plaintiff in regard to profits and losses in this case.

■ We now proceed to pass on the question of damages as allowed. Both parties are dissatisfied with the damage awarded by the special master. We have carefully reviewed the master's findings and the evidence upon the subject of general damage. We have come to the conclusion that he is right in his holdings as to the damage items. We confirm his award on his findings. It seems to us that the reasonable royalty

found by the master is adequate and justified by the evidence.

On plaintiff's motion to assess costs and provide for interest on the award, the plaintiff having prevailed before the master, we are of the opinion that as a matter of course the costs of the accounting must be assessed against the defendants. The decree will so provide.

On the subject of interest, we believe the correct and proper ruling would be to allow interest on the award of damages from the date that the infringement ceased. Motor Player Corporation v. Piano Motors Corporation (D. C.) 19 F.(2d) 993. The decree may so provide.

The exceptions, therefore, both of the plaintiff and of the defendants to the special master's report will be overruled, and the report confirmed absolutely. A decree in accordance with this opinion may be submitted.