## TRIPLEX SAFETY GLASS CO. OF NORTH AMERICA v. PITTSBURGH PLATE GLASS CO.

### No. 118.

District Court, D. Delaware.
April 25, 1941.

Ambrose L. O'Shea (of Redding, Greeley & O'Shea), of New York City, and Howard Duane, of Wilmington, Del., for plaintiff.

Joseph T. Owens and Leland Hazard, both of Pittsburgh, Pa., and Caleb R. Layton, 3d (of Hastings, Stockly & Layton), of Wilmington, Del., for defendant.

NIELDS, District Judge.

Motion to dismiss.

The complaint alleges: That heretofore plaintiff brought an action against Duplate Corporation in the United States District Court for the Western District of Pennsylvania for infringement of plaintiff's patent No. 1,182,739 covering the making of safety glass; that on June 7, 1938, Duplate Corporation was dissolved and its assets were transferred and conveyed to defendant, Pittsburgh Plate Glass Company; that the District Court held the patent valid and infringed and ordered defendant to file an account of the profits derived from such infringement; that the Circuit Court of Appeals for the Third Circuit affirmed the holding of the District Court; that pursuant to the decrees of said courts an accounting of the profits made by defendant "was settled by the said Courts and said account was settled on the established legal theory that the said defendant, Pittsburgh Plate Glass Company, had by the use of plaintiff's patent made profits which rightfully belonged to the plaintiff and which, therefore, should be paid to the plaintiff"; that in settling the account the District Court found that defendant was entitled to a reduction of $216,540.76 for federal income taxes paid by defendant in 1928, 1929 and 1930 on income aggregating $1,891,046.44 attributable to the infringement; that this finding was affirmed by the Circuit Court of Appeals for the Third Circuit and by the Supreme Court of the United States; that upon said accounting plaintiff obtained an award of $1,560,378.-59. Triplex Safety Glass Co. v. Duplate Corporation, D.C., 42 F.2d 737; 3 Cir., 42 F.2d 739; D.C., 10 F.Supp. 420; 3 Cir., 81 F.2d 352; 298 U.S. 448, 56 S.Ct. 792, 80 L.Ed. 1274; 3 Cir., 110 F.2d 326.

That defendant "has filed with the Federal Income Tax Service of the Internal Revenue Bureau either..a claim for a refund of the whole or some part of the tax paid by it in said years 1928, 1929 and 1930, to-wit, $216,540.76; or has claimed as a

deduction on the income tax returns filed by it in the years 1936 and 1937, or any amendment to said returns, the whole or some part of the said sum of $1,560,378.59, and that by either of such methods it will thus again be reimbursed for the income tax so found by the United States Courts to have been paid by it in the said years 1928, 1929 and 1930 for which it has, as aforesaid, received reimbursement from the plaintiff by way of deduction of the said $216,540.76 from the profits which the said United States Courts have decreed it otherwise should have paid the plaintiff."

Otherwise stated, the complaint in effect alleges: (1) That defendant has obtained or may obtain a refund of said taxes paid by it in 1928, 1929 or 1930, or (2) that defendant has obtained or may obtain a tax saving by claiming the amount of said award as a deduction in its income tax returns for the years 1936 or 1937.

Upon the basis of the above allegations plaintiff prays that defendant be directed to account for any refund of said 1928, 1929 or 1930 taxes and for any tax savings in 1936 or 1937 resulting from deduction of said award, or, in the alternative, for judgment against defendant for $216,540.-76, the amount of 1928, 1929 and 1930 taxes.

Assuming that defendant has obtained or may obtain a refund of said taxes and a tax saving by deduction of said award, the question before the court is whether the amount of such refund and saving "rightfully and equitably belongs to the plaintiff" as alleged in the complaint. This is a simple question of law which can be decided on the basis of the allegations of the complaint.

Plaintiff's theory is that the profits from the infringement are the property of plaintiff from the moment they are earned and that defendant is in the position of a trustee holding profits belonging to plaintiff. Plaintiff conceives of defendant as a trustee holding a res, the income from the infringement, upon which defendant has paid an income tax on behalf of plaintiff. Plaintiff concludes that the defendant as trustee has been reimbursed by plaintiff as cestui, and if the defendant receives a refund of such taxes, he should hand over such refund to plaintiff.

It is clear from the decisions of the Supreme Court that an infringer is not a trustee, and that he is not converted into a trustee merely because the measure applicable to trustees is applied in an accounting of profits derived from infringement. "To call the infringer an agent or trustee is not to state a fact but merely to indicate a mode of approach and an imperfect analogy by which the wrongdoer will be made to hand over the proceeds of his wrong". Larson, Jr., Co. v. Wrigley, Jr., Co., 277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800.

In the prior accounting upon which this action is based the Supreme Court declared the principles upon which the account should be stated: "Whatever is at his call in the service of the enterprise—brawn and intelligence, factories and lands, patents and machinery—will be viewed upon an accounting as if held upon a quasi trust to contribute what it can to the profits of the business". Duplate Corp. v. Triplex Co., 298 U.S. 448, 457, 56 S.Ct. 792, 796, 80 L.Ed. 1274.

Defendant was denied a deduction of the amount of economies which other patents owned by it contributed to the final product. Plaintiff is now seeking to distort this measure of profits based on the trust analogy to a rule that the defendant infringer is actually a trustee, and is seeking to have the income taxes treated as if paid by a trustee on trust property.

In another Supreme Court case it was urged that the bill stated grounds for equitable relief because the infringer was a trustee and an accounting of his profits was sought.

"The distinct ground upon which the opposite view is presented to us in argument is, that the infringer of a patent-right is, by construction of law, a trustee of the profits derived from his wrong, for the patentee, and that a court of equity, in the exercise of its acknowledged jurisdiction over trusts and trustees, will require him to account as trustee, without reference to any other relief. And in support of this contention we are referred to passages in the judgments of this court in the cases of [Washington, A. & G. Steam] Packet Company v. Sickles [19 Wall. 611, 22 L.Ed. 203], Burdell v. Denig [92 U.S. 716, 23 L.Ed. 764], and Birdsall v. Coolidge [93 U.S. 64, 23 L.Ed. 802], all of which have been already cited in this opinion * * *.

"But the inference sought to be drawn from the expressions referred to is not warranted. It is true that it is declared in

those cases that, in suits in equity for relief against infringements of patents, the patentee, succeeding in establishing his right, is entitled to an account of the profits realized by the infringer, and that the rule for ascertaining the amount of such profits is that of treating the infringer as though he were a trustee for the patentee, in respect to profits. But it is nowhere said that the patentee's right to an account is based upon the idea that there is a fiduciary relation created between him and wrong-doer by the fact of infringement, thus conferring jurisdiction upon a court of equity to administer the trust and to compel the trustee to account. That would be a reductio ad absurdum, and, if accepted, would extend the jurisdiction of equity to every case of tort, where the wrong-doer had realized a pecuniary profit from his wrong." Root v. Railway Co., 105 U.S. 189, 214, 26 L.Ed. 975.

The patent infringer is not a trustee and the trust analogy is merely used as a measure of compensation.

"The generic rule for ascertaining the amount of the profits recoverable in equity for the infringement of a patent, is that of treating the infringer as though he were a trustee for the patentee, in respect of the profits which he realized from his infringement. * * * This must not be taken to mean that there is a fiduciary relation created between the patentee and the infringer by reason of the infringement. All that it means is that compensation is to be computed and measured by the same rule that courts of equity apply to the case of a trustee who has wrongfully used the trust property for his own advantage." 3 Walker on Patents (1937) Sec. 844.

Profits from the infringement in 1928, 1929 and 1930 were income of defendant and were properly taxed as such. The infringer of a patent creates the profits. These profits for tax purposes are properly returned as his income in the years earned. Having committed a wrong in infringing the patent the infringer is compelled to compensate the owner for the damages. The nature of such damages in equity is the profit derived from the infringement. When defendant received profits from the sale of infringing articles in 1928, 1929 and 1930 defendant became liable for income taxes. These profits did not belong to plaintiff. They were received by defendant under a claim of right. Such profits were taxable income of the defendant even though, in a later accounting, an amount measured by the net profits, after deduction of all expenses including taxes, was paid to plaintiff.

"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent". North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197.

The amount paid to plaintiff pursuant to the accounting is income of plaintiff and taxable as such. If the infringer were a trustee and had paid the tax on the profits as a trustee, the subsequent distribution of the profits to the owner of the patent would be tax free. The profits received by a patent owner from the infringer are taxable even though the infringer has already paid a tax on his income derived from the infringement. No refund of the taxes paid by defendant in 1928, 1929 and 1930 on the profits from the infringement has ever been claimed because these taxes were levied on defendant's income. The fact that defendant had to pay to plaintiff an amount measured by profits from the infringement is irrelevant. The amount to be reported by plaintiff is the total amount awarded it by the court. The judgment in the prior patent accounting proceeding fixed the amount of labor and materials to be allowed as a deduction in computing the profits. As alleged in the complaint, the judgment also fixed the amount of the taxes to be allowed as an expense in computing the profits. Defendant was ordered to account to plaintiff for its profits derived from the infringement of the patent. Profits are the difference between the cost of producing the infringing article and the sale price of the article. It is generally easy to ascertain the amount realized by defendant and generally difficult to determine defendant's costs. One of the items which has occasioned considerable confusion is that of federal income taxes paid by defendant on income derived from infringement. It is now clearly established that federal income taxes paid by defendant on income derived from the infringement are a proper item of expense to be deducted in computing the

profits in an accounting proceeding, except in the case of a wilful infringer. Triplex Safety Glass Co. v. Duplate Corporation, D.C., 10 F.Supp. 420; affirmed 3 Cir., 81 F.2d. 352; 298 U.S. 448, 56 S.Ct. 792, 80 L.Ed. 1274. In all the opinions in the prior accounting on which the present action is based defendant was held to be acting in good faith and therefore the federal income taxes were treated in exactly the same manner as labor, material, interest on investment and other items of cost in computing the profits from the infringement. In settling the account the District Court found that defendant was entitled to deduct $216,540.76 for taxes paid by defendant, as alleged in the complaint, and this finding was affirmed on appeal. Plaintiff's present claim is nothing more than an attempt to reopen and relitigate a matter that has been finally adjudicated in the prior accounting proceeding.

Plaintiff seeks to recover the amount of any tax saving which defendant obtained, or may obtain, through deduction of the amount of the judgment rendered in the prior accounting proceeding. It must be assumed that defendant was permitted to deduct the amount of the prior judgment in a year in which it had a profit and thus obtained an advantage from such deduction in computing its federal income tax. Deductions allowed defendant in computing its federal income tax concern only the Government and the defendant taxpayer, and are of no concern to plaintiff. The tax situation of each party is entirely separate and independent. Plaintiff has no more interest in whether a deduction of the amount of the judgment resulted in a tax saving to defendant, than defendant has in the taxes which plaintiff may have to pay on the amount of income it received pursuant to the decree in the patent infringement accounting.

Plaintiff relies upon W. W. Sly Mfg. Co. v. Pangborn Corporation, D.C., 276 F. 971. That case is clearly distinguishable from the present case. The Sly case involved an accounting for profits and is comparable to the prior accounting action in this case. In the Sly case the court was attempting to ascertain the amount of taxes which should be allowed as a deduction in computing the profit from the patent infringement. That point has been passed in this case. The federal District Court which decided the prior accounting action finally fixed the amount of the taxes which should be deducted at $216,540.76. The amount of the tax deduction having been fixed and determined in the prior accounting proceeding, it is no longer open to plaintiff to attempt to change the amount of that deduction as a result of later occurrences, whether tax refunds or tax savings.

The motion to dismiss must be granted.