## MARSH v. SEYMOUR.

### SAME v. SAME.

1. The court concurs with the court below that reissued letters-patent No. 72, dated May 7, 1861, and No. 1683, dated May 31, 1864, for new and useful improvements in reaping-machines, and reissued letters No. 1682, dated May 31, 1864, for a new and useful improvement in harvesters, all of which were granted to William H. Seymour and others, are valid, and that they have been infringed by the respondents.

2. *Seymour* v. *Osborne* (11 Wall. 516) cited, and commented on.

3. Compensatory damages for the infringement of letters-patent may be allowed in equity, although the business of the infringer was so improvidently conducted as to yield no substantial profits.

APPEALS from the Circuit Court of the United States for the Eastern and the Western District of Pennsylvania.

The bill in the first case was filed in the Circuit Court of the United States for the Eastern District of Pennsylvania, by William H. Seymour and Dayton S. Morgan, of New York, to restrain the respondents, James S. Marsh, Elisha C. Marsh, Charles C. Marsh, and John A. Grier, from infringing reissued letters-patent No. 72, dated May 7, 1864, and No. 1683, dated May 31, 1864, for new and useful improvements in reaping-machines, and reissued letters No. 1682, dated May 31, 1864, for a new and useful improvement in harvesters, — all of which were granted to William H. Seymour and others, but of which he and Morgan are by assignment the owners. In the second case, the bill, which also alleges the infringement of the re-issues above referred to, was filed by the same complainants in the Circuit Court for the Western District of Pennsylvania, the respondents being James S. Marsh, Charles C. Shorkley, Elisha Shorkley, and D. S. Kremer.

In each case there was a decree for the complainants, and the respondents appealed here.

The remaining facts are stated in the opinion of the court.

*Mr. J. J. Coombs* and *Mr. J. O. Parker* for the appellants.
*Mr. George Harding*, contra.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Owners of a patent, whether patentees or assignees, may seek redress for the unlawful use of the improvement which it secures, in the Circuit Court, by a suit at law or in equity, at their option; but in either form of proceeding they must allege and prove that they, or those under whom they claim, are the original and first inventors of the improvement, and that the opposite party or parties have infringed their exclusive right to make or use the same, or vend it to others to be used. Both allegations must be proved; but the letters-patent, if introduced and in due form, afford a *prima facie* presumption that the first allegation is true, which casts the burden of proof upon the defending party.

Patents, when inoperative or invalid, may in certain cases be surrendered and reissued; but the new patent in such case

must be for the same invention as the original patent; and if it is for a different invention, the reissue is invalid, for the reason that it was granted without authority of law.

Redress is sought in two suits in equity by the complainants for the infringement of five of the patents which they own, their title to the same not being in controversy. Service was made, appearance entered, answers and replications filed, proofs taken, hearing had; and the Circuit Court entered a decree, sustaining the validity of three of the patents, and that the complainants recover of the respondents the profits, gains, savings, and advantages they made in consequence of the infringement, together with the damages they sustained thereby, with costs and charges.

Such a decree was entered in each case, with a further decree, that the cause be referred to a master to compute the profits, gains, savings, and advantages made by the respondents. Both parties excepted to the report of the master in each case; and the court overruled their respective exceptions, and decreed that the complainants do recover of the respondents in the first case the sum of $6,280 damages for machines made and sold, adding six cents as nominal damages for machines not sold, with costs as taxed; and that the complainants do recover of the respondents in the second case the sum of $13,085.06, with costs as taxed, — the master having allowed $5, a sum equal to a license fee, for each machine sold, amounting to $13,085.06 nominal damages for machines manufactured and not sold.

Immediate appeal was taken by the respondents to this court, and they now assign the following errors: 1. That the first two, to wit, No. 1682 and No. 1683, are invalid, and that the Circuit Court erred in not sustaining the defence that the respective inventions were neither useful nor practical. 2. That the patent No. 72 is invalid, and that the Circuit Court erred in not sustaining the defence that the patentee was not the original inventor of the improvement. 3. That the Circuit Court erred in holding that the reissued patent No. 72 was for the same invention as the original patent. 4. That the Circuit Court erred in overruling the exceptions of the respondents to the master's report.

Three patents only are involved in the present investigation, as exhibited in the assignment of errors, as follows: 1. Reissue No. 72, which has but a single claim; to wit, for a quadrant-shaped platform of a reaping-machine, arranged relatively to the cutting apparatus, substantially as described and for the purpose set forth. 2. Reissued patent No. 1683, the charge of infringement being limited to the second claim, which is as follows: The combination in harvesting machines of the cutting apparatus with a quadrant-shaped platform in the rear of the cutting apparatus, a sweep-rake mechanism for the operating of the same, and devices for preventing the rise of the rake when operating on the grain, those five members being and operating substantially as set forth. 3. Reissue No. 1682, the charge of infringement extending only to the first claim of the patent, which is as follows: The combination of the cutting apparatus of a harvesting machine with a quadrant-shaped platform arranged in the rear thereof, a sweep-rake operated by mechanism, in such a manner that its teeth are caused to sweep over the platform in curves when acting on the grain, these parts being and operating substantially as set forth in the specification.

Two of the patents, to wit, the first and the second, are reissues from the original patent granted to the first-named complainant, — No. 72, dated May 7, 1861, being a reissue of one of the three parts of a prior reissue of the original patent, and No. 1683, dated May 31, 1864, being a reissue of another of the three parts of the prior reissue of the same original patent granted to the original patentee. Reissue No. 1682, dated May 31, 1864, is a second reissue from a prior reissue, when the original patent granted to Palmer and Williams was divided into two parts, and reissued on an amended specification.

Properly construed, the defences to the charge of infringing patent No. 72 are as follows: 1. That the patentee was not the original and first inventor of the improvement. 2. That the reissued patent is not for the same invention as the original patent. 3. That the respondents have not made, used, or sold machines constructed in accordance with the mechanism described in the complainants' patent.

Attempt is not made to call in question the correctness of

the construction given to the patent when the court here was required, five years ago, to define its specification; and being satisfied that the views then expressed were correct, they are adopted in the present case.

No. 72 consists in constructing the platform of a reaping-machine, upon which the cut grain falls as it is cut, in the shape of a quadrant or of a sector of a circle, placed just behind the cutting apparatus, and in such relation to the main frame that the grain, whether raked off by hand or by machinery located behind the cutting apparatus, can be swept around on the arc of a circle, and be dropped heads foremost on the ground, far enough from the standing grain to leave room for the team and machine to pass between the gavels and the standing grain, without the necessity of taking up the gavels before the machine comes round to cut the next swath.

Infringers, if they give due notice of such a defence, may show that the patentee is not the original and first inventor of the improvement; and if they establish that allegation, the prosecuting party is not entitled to recover, but the burden to prove the defence, if the patent is introduced in evidence, is cast upon the defending party to prove the affirmative of the issue. *Seymour* v. *Osborne*, 11 Wall. 516. Apply that rule to the case, and it is clear that the burden of proof under this issue is upon the respondents, as the patent of the complainants is made an exhibit in the record.

Appellants set up want of novelty, and refer, in the first place, to the machine of Nelson Platt in support of their theory. Precisely the same defence was set up in the prior case founded on this patent, in respect to which decision the respondents admit that it is an authority in this case to the extent that the issues and facts are the same. Properly understood, say the court in that case, the machine referred to does not contain a combination of the quadrant-shaped platform with the cutting apparatus, in any practical sense. On the contrary, it has a square platform combined with the cutting apparatus, and the quadrant-shaped platform is combined with the square platform; nor does it contain any quadrant-shaped platform to receive the grain as it falls, the court holding that the ingredients of the patent in that case, as well as the

combination, are different from those exhibited in the complainants' machine, and that the mode of operation is also different.

Support to that theory, of a decisive character, is also found in the testimony of the expert witness called by the respondents. He admits in his cross-examination that there are material and substantial differences between the machine represented in the respondents' exhibit and that of the complainants; that he does not find in the respondents' exhibit the quadrant or sector-shaped platform arranged as in the complainants' machine, so that the grain falls thereon as it is cut by the cutting apparatus; that the quadrant-shaped part of the platform shown in the respondents' exhibit has the grain conveyed to it from a rectangular platform, which is in the rear of the cutting apparatus, the quadrant-shaped part being immediately connected to the rectangular platform.

They, the respondents, refer also to the machine of Obed Hussey as anticipating the patented quadrant-shaped platform of the complainants, which is also the same defence as that made in the prior suit founded on this patent. Hussey, as the court remarked in that case, was much engaged, for a time, in the manufacture of reaping-machines of various kinds. Most of his machines, however, were constructed without any reel and with square platforms, so as to drop the cut grain at the rear of the platform, differing so widely from the patented machine of the complainants as to require no argument to show that they do not afford support to the present defence.

Apart from these, he made the one set up as a defence in this case, which has a square rectangular platform, to which is bolted an angular addition, giving the rear part, when the addition is attached, an angular form. Examined when the addition is bolted to the main platform, irrespective of the other ingredients of the combination, it approaches much nearer to the invention of the complainants than the other exhibit given in evidence. Undoubtedly it was built during the autumn prior to the harvest season, during which the inventor of the complainants made his invention of the quadrant-shaped platform; but the proofs introduced by the respondents show that the square platform of Hussey, to which was bolted the angular

addition, was not used for cutting grain during the harvesting season of its manufacture.

Proofs were introduced in the former case to support the theory that that exhibit anticipated the complainants' patent. for the quadrant-shaped platform; but the court overruled that defence, upon two grounds: 1. That the two machines were substantially different. 2. That the machine as constructed was merely an experiment, and that it was never reduced to practice as an operative machine.

In support of the latter proposition, the court in that case remarked that the evidence showed that it was sent to the railroad depot, to be transported to some other place for trial; that there was no positive evidence that it was ever forwarded or used, or that it was capable of any beneficial use; that when it was transported from the depot, if at all, did not appear, but that it did appear that it was returned the next year, and was set against the wall by the side of the street in front of the shop, where it remained for some time; that it was then removed to the new shop of the maker, where it remained until it was taken to pieces and broken up by his order, and that it was never restored till long subsequent to the complainants' patent.

Three witnesses established the views there expressed, but the respondents contend that one of the three witnesses has since recalled certain important facts which he did not recollect at the time of his examination in the prior case. Proof was introduced by the respondents tending to show that the witness had seen, in the manufactory of the party last named, certain machines having an extra platform, with an angular guide-board bolted to the rear of the original platform, prior to the date of the complainants' invention, as shown in the evidence. Being asked whether he was not examined in the prior suit, the witness answered that he was; and he admits that he then stated that he did not remember but one machine with such a platform, and that he then stated that he had no knowledge what became of it, and he now testifies that those answers are correct.

During his examination-in-chief he testified to the effect that when it became necessary to have more room between the

gavels and the standing grain, so as to employ two horses abreast, an additional angular piece was attached to the back part of the platform, which finally developed itself into a part of a circle, the guide-board being sawed so that it could be easily bent.

In respect to that, he was asked if he made any statement of the kind in his deposition in the prior case, and his answer was that he did not; and when asked why he did not, his answer was that he did not think of it. Suffice it to say, that the subsequent explanations given by the witness as to the inconsistency of his statements, when one deposition is compared with the other, are not entirely satisfactory.

Taken as a whole, we are all of the opinion that the evidence of that witness is not sufficient to warrant the conclusion that the patent of the complainants is invalid, for at least two reasons: 1. Because the facts stated by the witness are, in view of the circumstances, too indefinite and uncertain to show that the machines which the witness saw embodied the same principle and mode of operation as the mechanism described in the complainants' patent. 2. Because the statements of the witness do not show that the machines were any thing more than abandoned experiments.

Two or three observations will be sufficient to show that the defence set up by the respondents, that the McCormick machine anticipates the complainants' invention of a quadrant-shaped platform, is entirely without merit. Both the specifications and the drawings of the patent afford abundant evidence to support that proposition. From these it appears that the grain cut by the machine is raked by the operator transversely across the machine, and that the raker, when in the act of discharging the cut grain upon the ground, endeavors to sweep it as near as possible into a position with the heads from the machine; but the platform is not so configured as to aid him in accomplishing that result, every thing in that regard depending upon the skill of the operator, and his physical ability to give the rake the right sweep at the right moment. Further discussion of the matter is deemed unnecessary, and the defence depending upon that machine is overruled.

Patents, in a proper case, may be surrendered and reissued,

but the reissued patent must be for the same invention as the original patent, else the reissue is invalid; but the patentee may redescribe his invention, and include in the description and claims of the specification not only what was well described before, but whatever else was suggested or substantially indicated in the old specification, drawings, or patent-office model, which properly belonged to the invention as actually made and perfected. Corrections may be made in the description, specification, or claims of the patent where the patentee has claimed as new more than he had a right to claim, or where the description, specification, or claim is defective or insufficient; but he cannot, under such an application, make material additions to the invention which were not described, suggested, nor substantially indicated in the original specifications, drawings, or patent-office model.

Extended discussion of those principles is unnecessary, as they are well settled by the repeated decisions of this court, and when properly applied to the case before the court, they show that the third assignment of error must be overruled, for the reason that the new patent does not contain any thing beyond what was well described or suggested in the specification of the original patent.

Passing for the present the question of infringement, the errors assigned in respect to the reissued patent No. 1682 will next be considered. They are as follows: 1. That the patent is invalid. 2. That the invention is neither useful nor practical.

Much discussion of the first error assigned cannot be required, as it is too indefinite to convey any distinct idea as to what is meant. Patents may be invalid because the patentee is not the original or first inventor of the improvement, or for the reason that the written description of the same is not in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains to make, construct, compound, or use the same; or a reissued patent may be invalid because it is not for the same invention as the original. None of these defences, however, if made, could be supported; and in view that no more explicit cause of error is assigned, the first assignment of error must be overruled.

Explicit explanation is made in the brief as to what is meant by the second assignment of error, which is, that the patent does not in terms describe any device to prevent the rake from rising when operating upon the grain, and enough appears to show that the rake in the first machine made by the complainants was not of sufficient weight to prevent it from rising when the teeth came in contact with heavy grain. Brief experiment, however, was sufficient to disclose the defect, which was immediately remedied by adding a spring of proper stiffness to hold the rake down without impairing the other operating devices to enable the rake to perform the function of removing the cut grain from the platform, and causing it to drop in gavels in the proper place.

None of these facts are controverted; but the respondents contend that the spring was a new invention, and that any one may make and use the patented machine, or vend the same to others to be used, without the spring, and not be liable as infringers; but the court is entirely of a different opinion, as the addition of the spring for the purpose suggested is nothing more than any practical mechanic or operator would supply as soon as the difficulty was discovered.

Viewed in the light of these suggestions, it is clear that the defence to the second patent must be overruled.

Like defences are set up to patent No. 1683, which must also be overruled for the same reasons, the opinion of the court being, that all three of the patents described in the bill of complaint are valid.

Suppose that is so, still it is insisted by the respondents that they have not been guilty of infringement, as charged in the respective bills of complaint.

Conclusive evidence is reported in the record, showing that the respondents were largely engaged in manufacturing machines of the description referred to by the two expert witnesses examined in the case. Exhibit 1, it is conceded by the respondents, is an accurate representation of the machines which they made and sold, and the complainants accept the admission as correct. Great certainty, therefore, attends the present inquiry, and there is very little, if any, more difficulty in ascertaining the proper construction of the

complainants' machines, so that the principal matter of investigation under this issue is whether the machines made and sold by the respondents infringe the patented machines of the complainants in the respect charged in the bill of complaint.

Reissue No. 72 has but one claim, and the charge is that that claim is infringed by the respondents, and the complainants also charge that the respondents infringe the first claim of the patent No. 1682 and the second claim of No. 1683.

Investigations of the kind are ordinarily best conducted by comparing the machine made by the respondent with the machines described in the complainants' patent, or patents, where more than one is embraced in the same suit. Due comparisons of the kind have been made; and the court is of the opinion that the several inventions of the complainants, excepting the claims pointed out as not infringed, are embodied in the machines made and sold by the respondents.

Decided support to that proposition is derived from the testimony of the expert witnesses examined by each of the contesting parties. Direct testimony to that effect is given by the complainants' expert witness. He says that he finds in Exhibit 1 the improvement described and specified in reissue No. 72; that the exhibit mentioned shows the quadrant-shaped platform arranged relatively to the cutting apparatus substantially as described in reissue No. 72, for the purpose of receiving the cut grain as it is severed and falls upon the platform and is swept in a circular form, heads foremost, upon the ground in the arc of a circle, out of the way of the team on the next round.

Speaking of the other two reissued patents, the witness says that he finds in that exhibit of the respondents the combination of a cutting apparatus of a harvesting machine with a quadrant-shaped platform arranged in the rear thereof, and a sweep-rake, operated by mechanism in such a manner that its teeth are caused to sweep over the platform in curves when acting on the grain, substantially as described in the complainants' reissued patents. When specially interrogated, he said he applied those remarks to both the other patents; and the expert witness examined by the respondents, in his cross-examination, fully confirms the substance and effect of those statements, and they

accord with what this court decided in the former case, and are believed to be correct. *Seymour* v. *Osborne, supra.*

Grant that, and still it is insisted by the respondents that the rake which they employ does not infringe the rake of the complainants; but the court is not able to sustain the proposition, as the rake of the respondents is combined with a quadrant-shaped platform, and performs the same function in substantially the same way as it sweeps over the platform to remove the cut grain from the same, and cause it to be deposited in gavels, as described in the complainants' patents.

Differences exist in the mode of attaching the arm to the machine, and in the means employed for its return preparatory for another sweep; but in the performance of the function of removing the cut grain and depositing the same in gavels, the two devices are substantially the same in the sense of the patent law; nor can it benefit the respondents if their mode of returning the device for a second operation is better than the complainants', as that cannot give them any right to make, use, or vend what is patented to another.

Nothing remains but to examine the exceptions to the master's report as confirmed by the Circuit Court.

Separate decrees were entered in the two cases, and the master made separate reports. He found in the first case that all claim for profits was waived by the complainants, the respondents contending and offering proofs to show that they made no profits. Hearing was had, and the master also found that the respondents had made fourteen hundred and sixty-two machines which infringed the complainants' patents, two hundred and six of which had not been sold. Of course, they made and sold twelve hundred and fifty-six machines, for which the master estimated the damages on the basis of the license fee of five dollars each machine, amounting to $6,280, to which he added six cents as nominal damages for the machines made by the respondents and not sold.

Pending the proceedings before the master in the second case, the complainants also withdrew their claim for profits, for the same reason as in the other case, and made claim for damages as for a license fee. Accordingly, the master found that the respondents had built twenty-eight hundred and

seventeen machines which infringed the complainants' rights, of which two hundred were not sold. Adopting the same rule as in the other case, he found as damages the license fee of five dollars on each of the machines made and sold, amounting to $13,085, to which he added six cents as nominal damages for the machines made and not sold.

Damages of a compensatory character may be allowed to a complainant in an equity suit, where it appears that the business of the infringer was so improvidently conducted that it did not yield any substantial profits, as in the case before the court. 16 Stat. 206; Rev. Stat., sect. 4921; *Birdsall et al.* v. *Coolidge*, 93 U. S. 64.

Without more, these explanations are sufficient to show that none of the exceptions to the master's report can be sustained, and they are respectively overruled.

The decree in each case will be affirmed; and it is

*So ordered.*