MERRELL SOULE CO. v. POWDERED MILK CO. OF AMERICA.

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 300.

1. Patents ⚖319(1) — Allowance for profits, not actually gained, not permissible in accounting for infringement.

In an accounting for infringement of patent, award for profits, admittedly not based on actual gains from business in which infringement was committed, and which actually showed a loss, held not sustainable.

2. Patents ⚖325 — Allowance for auditing books of patent infringer not sustainable in absence of profits.

In accounting for patent infringement, allowance to plaintiff for overhauling defendant's books cannot be sustained where defendant realized no profits.

3. Patents ⚖319(1)—Damages may be awarded on royalty basis, though infringer made no profit.

Though infringer realized no profits, recovery may be awarded on royalty basis, if the evidence indicates any reasonable method upon which damages may be assessed against defendant for his trespass.

4. Patents ⚖319(1)—Plaintiff entitled to damages for infringement of patent on "reasonable royalty" basis.

In accounting for infringement of closely held patent, although defendant actually operated his plant at a loss, and much of profitable conduct of plaintiff's business depended upon pre-existing method of preparing milk for patented process, evidence held to warrant recovery of damages on "reasonable royalty" basis.

5. Patents ⚖319(4) — Interest on damages upon fixed royalty basis calculated from time royalty would have been due.

In accounting for infringement of a patent, interest upon damages assessed upon a fixed royalty basis may be calculated from the time when the royalty would have been due.

6. Patents ⚖319(4)—Interest on damages assessed on reasonable royalty basis discretionary.

In accounting for infringement of a patent, interest on damages assessed upon reasonable royalty basis is discretionary.

Appeal from the District Court of the United States for the Western District of New York.

Action by the Merrell Soule Company against the Powdered Milk Company of America. Judgment for plaintiff (2 F.[2d] 107), and defendant appeals. Reversed, with directions.

Letters patent were issued to Stauf in 1901 (No. 666,711) for a process of converting milk into a dry powder soluble in water. This patent in this case was sustained in the court below in 1914. 215 F. 922. That decision was affirmed in this court on March 9, 1915 (222 F. 911, 138 C. C. A. 391), and the patent declared to be one of worth and entitled to a liberal interpretation.

The usual accounting was directed, and proceedings before the master began January 8, 1917, and his report was filed May 23, 1924. With some modifications, not now important, the report was confirmed, and final decree entered on behalf of plaintiff September 12, 1924.

This decree awarded the plaintiff as profits, "which the defendant has made by reason of the infringement herein found," amounting to $51,436.89. It further granted plaintiff recovery for $2,841.25, being a "disbursement made by the plaintiff in conducting an examination and audit of defendant's books."

From this final decree defendant appealed.

Archibald Cox and Harry A. English, both of New York City, for appellant.

Howard P. Denison and Eugene A. Thompson, both of Syracuse, N. Y., for appellee.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The master declared what he considered to be the profits derived from infringement by defendant, and also what he regarded as a proper award of damages on the basis of a reasonable royalty. The court below, having substantially affirmed the finding as to profits did not pass upon damages, but the whole case having been ap-

pealed, and, it being assigned for error inter alia that the District Court did not hold "that there was no legal proof upon which a judgment for more than nominal damages could be based," we are required to consider the whole record and to declare what judgment should have been entered on the report.

[1] The award of profits is admittedly not based upon any actual gains obtained by defendant from the business in which, in common parlance, the infringement was committed. What defendant did was this: It acquired a creamery; i. e., an establishment designed for the making of butter. For a creamery, skim milk is a waste product; yet defendant thought it better business to buy the creamery and utilize the skim milk there produced, rather than to set up a new establishment and buy its milk skimmed for the purpose of making milk powder therefrom.

This may not have been an economical method of pursuing the milk powder business; but there is no evidence tending to show that the butter enterprise was a blind or shelter for infringement, nor that defendant did not expect or hope to make a profit out of the manufacture of butter as well as from milk powder. Neither is it denied that during the infringing period, which extended from August, 1910, to April, 1915, defendant's entire business (i. e., the making of butter and powdered milk) showed a loss.

Defendant declared this fact by its account filed at the outset of proceedings before the master, and exhaustive investigation of defendant's books by five employees of plaintiff (hereinafter referred to) established the fact beyond peradventure.

The master made an award of so-called profits, however, on the theory that defendant's creamery was to be considered as two separate businesses—one, the business which defendant bought; the other, the business of making powdered milk. For the second business the basis or raw material was skim milk; but, since this skim milk was derived from a creamery that was losing money, it cost so much that defendant ought not to have used it, but should have gone into the open market and bought cheaper skim milk, and, if this had been done, while in other respects defendant's business was conducted as a unit, the separate or separable business of making powdered milk would have shown a profit; i. e., the amount declared and awarded to plaintiff.

This procedure is in our judgment inconsistent with the facts and opposed to the law. As to the facts, there is no satisfying proof that, considering the location of defendant's creamery, there was any sufficient supply of skim milk available for purchase, while the law is plain that even that trespasser, the infringer, is liable only for "actual not possible gains," and that there were no actual gains stands admitted. Rubber Co. v. Goodyear, 9 Wall. 801, 19 L. Ed. 566; Coupe v. Royer, 155 U. S. 565, 15 S. Ct. 199, 39 L. Ed. 263.

In the court below, this method of constructing an imaginary business for the defendant, and mulcting him in what he would have made had he embarked thereupon, was thought to be justified by Hemolin Co. v. Harway, 166 F. 434, 92 C. C. A. 186. We find no such ruling there made. In that case defendant was and long had been engaged in making and selling presumably at market rates and profitably a well-known commercial article. The patent there in suit could be used to alter and better this commercial article—a process which defendant used, and so infringed. The court held that the profit on the infringing product should be separated; so much thereof as was represented by the market price of the old noninfringing article to belong to defendant, and the increased profit gained by infringement to accrue to the patentee. To construe that allocation of profits as warrant for separating one business into two, and punishing even an infringer for not having more successfully infringed, cannot be done in reason, and the procedure also renders the case opposed to the ruling decisions above quoted.

[2] As there were no profits, the decree below was erroneous in awarding them, and with the profits the allowance for overhauling defendant's books must also go. This allowance was thought to be justified by Flat-Slab Co. v. Turner (C. C. A.) 285 F. 257, 284. That decision put on the infringer the cost of an accountant "employed by the master" to go over the infringer's books. The practice is perilous, and we are not now called upon either to approve or condemn; but we point out that the award here is to the plaintiff, who sent its own chief accountant and four assistants to examine defendant's books, and the major portion of the sum awarded consists of the salaries of these five men (regularly paid by plaintiff) for the time they expended on said books. The rest is apparently for travel and attendant expenses. The ease with which such a

charge can be abused is sufficient reason for extreme caution in permitting anything of the kind.

Our reason for disallowing the whole item is that there were no profits, but it is thought advisable to point out that the Flat-Slab Case is authority for nothing but employment by the master of an accountant; it does not cover this attempted transfer to defendant of a substantial portion of plaintiff's salary list.

[3, 4] The question remains whether plaintiff has made out a case for damages, on what has come to be called the "reasonable royalty" basis.

In Consolidated, etc., Co. v. Diamond, etc., Co. (D. C.) 226 F. 455, affirmed 232 F. 475, 146 C. C. A. 469, it was said at page 459, that Dowagiac, etc., Co. v. Minnesota, etc., Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398, may be regarded "as settling the mooted question as to whether a reasonable royalty may be allowed, and as laying down a more liberal rule, to be applied with caution."

With this we agree; and the historical development of the matter is that the court in the Dowagiac Case had before it two lines of its own decisions—one very strict, of which Coupe v. Royer, supra, was commonly, and we think naturally, regarded as a striking illustration; the other apparently recommending a resort to "general evidence" in order to obtain "a fair measure of damages or even an approximation thereof." Of these decisions Suffolk Co. v. Hayden, 3 Wall. 315, 18 L. Ed. 76, and Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975, were the most commonly cited examples. The Dowagiac decision unquestionably indorsed the more liberal rule by holding that, where a patent had been kept as a close monopoly, and there was no established royalty, it is "permissible to show the value by proving what would have been a reasonable royalty, considering the nature of the invention, its utility and advantages, and the extent of the use involved."

But we think any reader of that ruling decision will say that what turned the scale in favor of liberality was the line of cases there reviewed and coming from various lower courts, and particularly the judgment of Denison, J., in United States Frumentum Co. v. Lauhoff, 216 F. 610, 132 C. C. A. 614, decided while the Dowagiac Case was under consideration. That learned judge has done more than any other one man to liberalize the matter of damages for infringement of a patent, and in the Frumentum Case (page

617, 132 C. C. A. 621) he well put the situation as it stood before his own decision. He said, and spoke from experience in saying, that "it is familiar knowledge * * * that experienced patent counsel have advised that, as a general rule, no recovery [of damages] that would pay the expense of litigation could be anticipated." On the same page he stated convincingly the reasons why general damages "frequently spoken of as a 'reasonable royalty'" ought to be recovered on exactly the principles that a jury had always been permitted to assess damages against one who by a trespass had injured any other species of personal property. He there pointed out inter alia that a jury could be shown to what extent the defendant had taken plaintiff's patent property, the extent and use of that property, what share of the selling price it was customary to allow for the use of such an invention, and experts might give useful opinions as to the value of the property appropriated by the infringer; also that from such evidence "not resting on any of the applicable exact methods of computation," the "jury or the court [might] estimate in a general, but in a sufficiently accurate, way the injury to plaintiff caused by each infringing sale." This is the more fully stated doctrine authoritatively approved by the Dowagiac decision, and it has been received with general approbation.

In this court, Munger v. Perlman Corp. (C. C. A.) 275 F. 21, shows an instance in which the trial court had found at final hearing that there was no basis for an award of profits or for an assessment of damages on lost sales, and that there was no established license rate, whereupon the matter was referred by an order using exactly the above-quoted language of the Dowagiac Case; and the method of computation by us approved under that order was substantially to consider the various estimates or opinions of persons more or less qualified to express them and arrive at a result, as would a jury.

More recently, in K. W. Ignition Co. v. Temco (C. C. A.) 283 F. 873, certiorari denied 260 U. S. 746, 43 S. Ct. 247, 67 L. Ed. 493, there was no opinion evidence (page 878) as to the rate of reasonable royalty; yet the court proceeded to assess damages on the basis of a royalty estimated as appropriate to the manufacturing and selling profits proved.

Still more recently, in Austin, etc., Co. v. Disc, etc., Co. (C. C. A.) 291 F. 301, certiorari denied 263 U. S. 717, 44 S. Ct. 180, 68 L. Ed. 522, it is well said (page 304): "Where

general damages by way of a reasonable royalty are allowed there is no mathematical formula for their determination. The purpose in view in any particular case is to determine what amount a person desiring to manufacture and sell the patented article would, as a business proposition, be willing to pay as a royalty; that is, what amount could he fairly pay * * * and be able to make and sell in the market the patented article at a reasonable profit." The learned court added that evidence directed to this end would be as "to the character of the invention, costs of manufacture, costs of marketing, sales prices, demand," etc.; also that royalties paid "in more or less similar situations would be considered, although the weight of such evidence in any particular case might be slight."

Result nowadays is that, since the Dowagiac decision opinion has strongly held that the so-called rule of "reasonable royalty" means that, if the evidence indicates any reasonable method by which a jury could award general damages against a trespasser upon the patent property of the plaintiff, either the jury or the court may estimate and award such damages.

In this case there is ample evidence that the patent was closely held; plaintiff was substantially the only authorized manufacturer of powdered milk under Stauf's patent. Defendant did infringe by using that patented process, and did sell considerable quantities of a product that competed with the patented product at a time when plaintiff always had on hand and was ready and willing to sell the quantities of powdered milk actually sold by defendant. There is some evidence by persons acquainted with the powdered milk trade of what in their opinion would have been a reasonable royalty, and there is plain evidence, wholly uncontradicted, that during the entire period of infringement the plaintiff was making and selling its powdered milk at an average profit of 2.17 cents per pound. But there is also evidence that plaintiff made and makes its powdered milk, not only under Stauf's patent, but by using a process of precondensation before applying the Stauf method, and it appears to us fairly shown that the economical and profitable conduct of plaintiff's business as proven depends to some extent upon this precondensing method of preparing milk for the patented process. The question then is, What would a reasonable man, who wished to go into this business in the hope of procuring a reasonable profit, be willing to pay for the use of a necessary process, which, however, was only a part of the whole process of making powdered milk?

There is ample evidence for a jury to act upon. Therefore there is enough to enable us to form opinion, and it is our opinion, and we so find, that a uniform royalty of one-half a cent per pound was as much as any one could reasonably be expected to pay for a license under the patent in suit. Defendant sold according to the master's report 3,128,723 pounds of the powdered product; therefore the damages are assessed at $15,643.61.

[5] There still remains the question of interest upon damages. If the damages had been assessed upon a fixed royalty basis, interest has long been allowed calculated from the time when the royalty would have been due. Walker (5th Ed.) § 571, citing cases. In Goodrich Co. v. Consolidated Co., 251 F. 617, 163 C. C. A. 611, certiorari denied 247 U. S. 519, 38 S. Ct. 580, 62 L. Ed. 1246, it was held that there was "no valid reason for withholding interest where the damages are based upon a reasonable royalty." Page 624 (163 C. C. A. 618). And this decision was followed by the same court that decided the Frumentum Case in K. W. Ignition Co. v. Temco, supra (p. 880), and interest was awarded "from the date infringement ceased."

[6] While we are not disposed to depart from this as a general rule, still these are damages recovered and recoverable in equity, and the rule is general that, especially in matters of tort, interest is in discretion. We so held in Pennsylvania, etc., Co. v. New York, etc., Co., 198 F. 778, 780. And the principle is thoroughly recognized in Bates v. Dresser, 251 U. S. 524, 40 S. Ct. 247, 64 L. Ed. 388.

In the condition of this record we should be inclined to refuse or limit interest if it were possible to allocate the blame for the intolerable and (even in patent causes) almost unheard of delay in this case. It was more than a year and a half after this court approved the patent before any proceedings before the master began. The plaintiff put in its case in about a year, and after that testimony was taken at intervals far apart, until an agreement was reached to submit briefs to the master on January 15, 1921—something more than three years before he reported. So far as we can see from the printed book, it was a case of arcades ambo. Therefore, reserving the right in a proper case to treat interest on damages in equity as in discretion, we allow interest

from the date of order on the mandate of this court issued in March, 1915. The defendant will recover the costs of this appeal; the costs of the lower court are left to the discretion of that tribunal.

Decree reversed, with directions to enter a new decree in conformity with this opinion.