## ELECTRICAL ENGINEERS EQUIPMENT CO. v. CHAMPION SWITCH CO.

District Court, W. D. New York.

Feb. 10, 1931.

Charles A. Brown, of Chicago, Ill., for plaintiff.

William S. Hodges, of Washington, D. C., and Daniel J. Kenefick, of Buffalo, N. Y., for defendant.

HAZEL, District Judge.

Exceptions of the defendant to the master's findings relate (1) to profits awarded plaintiff on the patented disconnecting switches described in letters patent No. 1,-212,161 to Frank E. Getts, and No. 1,515,116 to Ernest H. Jacobs, including bases and insulators not invented by either of the patentees; and (2) to refusal by the master to make deductions arising from losses suffered from sales of the infringing switches made by defendant. Plaintiff does not ask damages. No exceptions have been filed relating to defendant's Tidewater switch (Exhibits K and B) and third type switch (Ex-

hibit E), which types, the master decided, did not come within the scope of the patents in suit. We are therefore concerned herein solely with the profits made by defendant on its manufacture and sale of infringing switches of Plaintiff's Exhibit A type, which the master found amounted to $23,219.27.

The corrected report of the master, relating to the profits earned by the Champion Switch Company on the manufacture and sale of the disconnecting switches (Exhibit A), has been considered by me in connection with the exceptions thereto and the arguments in support thereof. I have reached the conclusion that the master in his complete and able report has accurately applied the law to the evidence adduced before him. I can add little thereto. I will, however, as briefly as possible, state my views with relation to the argument made at the hearing for confirmation. First, as to the asserted losses. I do not think that losses resulting, for instance, from sales of the disconnecting switch, including the blade assembly, below cost of manufacture, were deductible from the profits.

The case of Canda Bros. v. Michigan Malleable Iron Co. (C. C. A.) 152 F. 178, contains an interpretation of the Cawood Patent, 94 U. S. 710, 24 L. Ed. 238, and Providence Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566. It was there said, on the authority of the two cases cited, that, though losses occurring concurrently with the profits are to be taken into account, yet the general statement of the Supreme Court should be limited by the facts of the case in which they are expressed to harmonize the statement with the law as declared in Crosby Steam Gage & Valve Co. v. Safety Valve Co., 141 U. S. 453, 12 S. Ct. 49, 35 L. Ed. 809. As pointed out by the master in this case, the entire commercial value of the valves in the Crosby Case was attributable to the patented improvement, and any losses resulting from unlawful invasion were neither chargeable nor deductible from the profits on sales. This, I think, was a correct understanding of the law; for, if switches during any period were sold at a loss—part having been sold at a profit—the losses cannot be set off against the profits.

Aside from Walker on Patents (6th Ed.) § 754, and the Crosby Case, there are other adjudications holding that, where profits in part were realized on sales of an infringing device and some losses sustained, the patentee has the right to recover the profits without setting off or deducting the losses. And in

Starr Piano Co. v. Auto Pneumatic Action Co., 12 F.(2d) 586, the Circuit Court of Appeals, Seventh Circuit, ruled that it was not error for the master, on cessation of infringement, where defendant's books showed a loss for a calendar year, to exclude that year from the profit accounting without giving defendant credit for the loss as against profits of prior years; and in general the court said that there was no unfairness in requiring the infringer to sustain losses incurred in other transactions. See, also, Elizabeth v. Paving Co., 97 U. S. 126, 24 L. Ed. 1000, and McKee Glass Co. v. H. C. Fry Glass Co. (C. C. A.) 248 F. 125, 128. In the latter case, the Circuit Court of Appeals for the Third Circuit said: "* * * Against the defendant's contention that the complainant was entitled only to net profits on all sales after deducting losses on some from profits on others, the master held, we think correctly, that, as the complainant was not a quasi partner of the infringers, losses incurred by the defendants through their wrongful invasion of the complainant's patent were not chargeable to the complainant (Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 12 S. Ct. 49, 35 L. Ed. 809), and, therefore, the complainant was entitled to all profits realized by the defendants without deduction of any losses they had sustained."

The profits computed by the master were the net profits ascertained after deducting the cost of manufacture, labor, overhead, and various other items. The asserted losses on sales, amounting to $15,462.59, were not before the master in detail, and were commingled with the profit items, and it suffices to say that they must be borne by the infringer. See, also, Steam, etc., Co. v. Windsor Mfg. Co., Fed. Cas. No. 13336, and Graham v. Mason, Fed. Cas. No. 5672.

Second, as to the profits. The solution of the question whether plaintiff is entitled to the profits of the disconnecting switch which included bases and insulators, old devices in the art, or whether the accounting is to be limited to the blade assembly alone, depends upon the material facts. The blade assembly concededly was the essential feature of both patents in suit, and the base and insulator were subsidiary. The evidence shows that the blade assemblies, save in a few instances, were not commercially salable, and were in fact sold to the trade in most instances in conjunction with the insulator and base attachment. Although the blade assembly at times, on request of buyers, was sold separately, the purchasers presumably adapting their own bases, the ordinary sales included the base and insulator to enable the switches to function properly. I do not accept the interpretation of the testimony of Stinson and Jacobs, tendered by defendant's counsel, that orders were continuously received for the infringing switches without the base and insulator, or that it has become a practice to make purchases of the patented switches alone. On the contrary, the evidence preponderatingly shows that the switches, in combination with the blade assemblies and base and insulator instrumentalities upon which the blade assemblies rested, were usually sold as unitary structures. In this relation I find that defendant has not satisfactorily shown that any part of the profits were separately realized from the sale of the bases and insulators, for the salability of the switches in combination with bases and insulators, old in the art, were primarily due to the blade assembly elements covered in the claims in suit; and hence no substantial ground exists for segregation or apportionment of the profits.

It seems to me that the principle announced in Westinghouse v. Wagner, 225 U. S. 604 (see sub. b, page 614), 32 S. Ct. 691, 694, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, controls the disposition of the controverted question. The elimination of gains and profits on bases and insulators under classification (d) in the Westinghouse opinion is not maintainable, since the patented inventions in issue were not used in combination with other infringing patents or valuable improvements which contributed to the profits. Plaintiff's theory is that the gains are shown to have eventuated from the manufacture and sale of its switches as a unit, regardless of old elements combined therewith. Such was the view of the master, and there is insufficient evidence upon which to determine that he erred. Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289; Central Trust Co. v. Texas Co. (C. C.) 32 F. 448. This is not a case where the patented switches were minor or subsidiary parts in combination with the bases and insulators, for the latter were merely auxiliary to the former. It seems to me that Judge Wallace in Wales v. Waterbury Mfg. Co. (C. C. A.) 101 F. 126, 129, and cases there cited, notably his excerpt from Goulds Manufacturing Co. v. Cowing, 105 U. S. 255, 26 L. Ed. 987, to the effect that one must look to the advantages derived from using the patented invention, "beyond those he might derive in using other instrumentalities open to the public," covers

the present situation. In defendant's infringing switches the elements of the claims in issue were embodied and alone rendered the switches commercially salable; while the added parts were more or less incidental thereto. It was not possible to secure from defendant's books, on examination, a precise segregation of the selling price and costs of the blade assembly, in order to determine correctly the profits of separate parts. This indicates that defendant's sales were made as a unitary structure.

Many other adjudications are cited in the briefs, but it is unnecessary to go further. It is therefore determined that the total gains and profits made by defendant and advantages secured by its manufacture and sale of plaintiff's switch (Exhibit A) resulted from the unlawful appropriation of the structure as a whole.

The exceptions are overruled. Plaintiff may enter a decree confirming the report of the master.