**DUPLATE CORPORATION et al. v. TRIPLEX SAFETY GLASS CO. OF NORTH AMERICA. \***

**TRIPLEX SAFETY GLASS CO. OF NORTH AMERICA v. DUPLATE CORPORATION et al.**

Nos. 5606, 5626.

Circuit Court of Appeals, Third Circuit.

Dec. 12, 1935.

---

\*Writ of certiorari granted 56 S. Ct. 668, 80 L. Ed. ——.

William Watson Smith, Leon E. Hickman, Smith, Buchanan, Scott & Gordon, and Christy & Wharton, all of Pittsburgh, Pa., for appellants Duplate Corporation.

Brown, Critchlow & Flick, of Pittsburgh, Pa. (Ambrose L. O'Shea, Drury W. Cooper, and William B. Greeley, all of New York City, of counsel), for appellee Triplex Co.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

These are cross-appeals from a decree of the District Court for the Western District of Pennsylvania affirming the report of a master in a reference for an accounting. The cause has been before this court on a prior appeal in Duplate Corporation v. Triplex Safety Glass Co., 42 F.(2d) 739. We there affirmed an interlocutory decree holding the plaintiff's patent for the manufacture of laminated glass valid and infringed by the defendant, the Duplate Corporation, hereinafter referred to as Duplate. Thereupon an accounting was ordered by the District Court and referred to a special master. The Pittsburgh Plate Glass Company, hereinafter referred to as Pittsburgh, which owned one-half of the stock of Duplate and supplied Duplate with the plate glass used in the manufacture of laminated glass, was added as a defendant by a supplemental interlocutory decree. The master found that the defendants were innocent infringers and that they had made no profits from their manufacture and sale of laminated glass. He recommended an award as special damages due to price reductions forced on the plaintiff. Triplex Safety Glass Company of North America, hereinafter referred to as Triplex, by the competitive methods of the defendants. He also recommended an award of $414,120.70 as general damages for the losses sustained by the plaintiff, measured by a so-called reasonable royalty. Both the plaintiff and the defendants filed exceptions to the master's report. The District Court dismissed the excep-

tions and affirmed the report in all respects. In a supplemental opinion it sustained the exceptions to the award to Triplex of the special damage item, having concluded that the adoption of a reasonable royalty as a basis of recovery precluded any further award. No error is assigned by the plaintiff to that ruling. By final decree, the District Court ordered that Pittsburgh pay to Triplex $414,120.70, together with interest from the end of the accounting period and also the costs of suit. Both the plaintiff and the defendants have appealed from that decree.

The plaintiff assigns error to the rulings by the District Court that the infringement was in good faith; that the defendants' method of stating the account was justifiable; that Duplate was entitled to take credit for rejects and returns of laminated glass and for pyralin losses; and that Pittsburgh was entitled to take credit, as to plate glass, for the use of patents owned by it, for federal income taxes, for interest on its investment, and for cutting losses. The defendants appeal from the award, which, they contend, is excessive, and from the rulings of the District Court that it had power to award general damages and that the defendants were not entitled to examine the plaintiff's books. They also appeal from the award of interest and from the imposition of costs.

We shall first discuss and dispose of the issues raised by the plaintiff's appeal.

### Good Faith.

The master found, and the District Court adopted the finding, that the defendants were not willful and deliberate infringers. The plaintiff assigns this conclusion of law as error. The District Court in its opinion stated that the defendants "took the advice of legal counsel who not only examined the plaintiff's patent, but the plaintiff's process in the manufacture of laminated glass, after which defendants' counsel gave to the defendants his legal opinion that their method of manufacturing strengthened glass did not infringe the plaintiff's patent." We do not accept as a general principle of law that the advice of counsel, prior to an infringement, precludes further inquiry into the good faith of an alleged infringer. It is not necessary, however, to place reliance upon such a principle in order to find that the defendants in the instant case did act in good faith. Although there is sufficient evidence on both sides of this controversy

to raise a valid issue, we are constrained to the conclusion that there is ample evidence to support the findings of the master and the District Court. The error assigned on this issue is not sustained.

### Method of Stating Account.

The defendants stated the account by deducting the total of the costs and expenses incurred in the manufacture of laminated glass during the entire accounting period from the total receipts from the sale of laminated glass for the same period. They thus treated the infringement as one continuing course of conduct and offset the profits derived from some sales by losses sustained from others. The master adopted this method and was sustained by the District Court. The plaintiff assigns this as error. It contends that proper patent accounting procedure requires that, where the infringement of a product claim is being accounted for, each sale constitutes a separate infringement; that the profit derived from each sale must be accounted for and turned over to the owner of the patent; and that if some sales result in losses, the infringer must bear those losses and may not offset the loss-incurring sales against the profitable sales. The plaintiff submitted an independent account in which it enumerated the individual sales made by Duplate, giving the name of the customer, the number of square feet of glass sold, and the net sales price. It set out the cost of material and labor of each sales unit on a monthly average basis computed by the same method as that used by the defendants in keeping their books, and allocated a proportion of the factory and general overhead to each sales unit. It offset the monthly average cost per square foot of laminated glass against the specific price per square foot for which the laminated glass was sold. It thus determined which sales were made at a profit and which at a loss. The master refused to adopt this method because of his conclusion that average costs do not reflect specific costs.

The plaintiff's method of separating the sales into profitable and unprofitable sales has been approved by us in McKee Glass Co. v. H. C. Fry Glass Co., 248 F. 125, 128, wherein Judge Woolley, speaking for this court, said: "The subject-matter of the reference to the master was injuries sustained by the complainant arising directly from infringing sales. These were measured by profits earned and damages in-

flicted. As the infringing sales were of two classes, those creating profits and those carrying losses, the master's inquiry was directed to the amount of profits on the former, and the measure of damages on the latter, or on both. Against the defendants' contention that the complainant was entitled only to net profits on all sales after deducting losses on some from profits on others, the master held, we think correctly, that, as the complainant was not a quasi partner of the infringers, losses incurred by the defendants through their wrongful invasion of the complainant's patent were not chargeable to the complainant (Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., 141 U.S. 441, 12 S.Ct. 49, 35 L.Ed. 809), and, therefore, the complainant was entitled to all profits realized by the defendants without deduction of any losses they had sustained. We find no error in either the theory or amount of this finding." See, also, Electrical Engineers Equipment Co. v. Champion Switch Co. (D.C.) 49 F.(2d) 359. The reason assigned by the master for refusing to follow this method is that in the instant case average costs do not reflect specific costs. We do not find any substantial factors in the instant case on this issue which differentiate it from the cited cases. The account must be restated in accordance with the plaintiff's method.

*Rejects and Returns.*
*Pyralin Losses.*

■ The contentions upon this issue are somewhat allied to the one just discussed. The defendants were allowed to take credit in the amount of $1,477,364.84 for rejects and returns of defective laminated glass and $219,036.93 for pyralin losses. The plaintiff objects to these allowances, contending that the accounting infringer may not offset against the profit which it made on the sale of the infringing product the loss which it sustained in the manufacture of such of the product as had not been sold, because defective, or, if sold, had been returned for the same reason. We think that this issue was decided adversely to the defendants here, in Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., 141 U.S. 441, 457, 12 S. Ct. 49, 55, 35 L.Ed. 809, where the Supreme Court said: "As for the contention that the destroyed valves ought to form a credit against the profits actually realized by the defendant on other valves, it is suf-

ficient to say that the only subject of inquiry is the profit made by the defendant on the articles which it sold at a profit, and for which it received payment, and that losses incurred by the defendant through its wrongful invasion of the patent are not chargeable to the plaintiff, nor can their amount be deducted from the compensation which the plaintiff is entitled to receive. Cawood Patent, 94 U.S. 695 [24 L.Ed. 238]; Elizabeth v. American Nicholson Pavement Co., 97 U.S. 126, 138 [24 L.Ed. 1000]; Tilghman v. Proctor, 125 U.S. 136, 8 S.Ct. 894 [31 L.Ed. 664]." We are of the opinion that the account must be restated so as to omit credits for rejects and returns and for pyralin losses.

*Patents.*

■■ Pittsburgh supplied Duplate with all of the plate glass used by the latter for laminated glass. In the manufacture of plate glass Pittsburgh used a so-called "continuous process" which embodied the teachings of twenty-six patents which Pittsburgh owned and which greatly reduced the cost of manufacture of plate glass. However, in billing Duplate, Pittsburgh calculated the cost of the plate glass as though it had been manufactured without the patented process. The master allowed Pittsburgh credit for the use of the twenty-six patents and was sustained by the District Court.

The sales value of the laminated glass was in no way enhanced by the fact that one of its component parts, plate glass, could be manufactured more cheaply by the use of the "continuous process" than without such process. The principle has been firmly established in patent law that where the entire commercial value of a mechanism or product arises from the patent improvement, the owner of the patent is entitled to recover from the infringer the total profits derived from the manufacture, use or sale of the mechanism or product. Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U.S. 604, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.(N.S.) 653; Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., supra; Carborundum Co. v. Electric Smelting & Aluminum Co. (C.C.A.) 203 F. 976; Conroy v. Penn Electrical & Mfg. Co. (C.C.A.) 199 F. 427; Wales v. Waterbury Mfg. Co. (C.C.A.) 101 F. 126. We conclude that the account must be restated so as to set forth the actual cost of the

plate glass without credit for the use of the patents involved in the "continuous process.".

### Federal Income Taxes.

■ The master found that Pittsburgh was entitled to a deduction for federal income taxes in the amount of $216,540.76. The Second Circuit in Stromberg Motor Devices Co. v. Zenith-Detroit Corporation (C.C.A.) 73 F.(2d) 62, and this Circuit in Macbeth-Evans Glass Co. v. L. E. Smith Glass Co. (C.C.A.) 23 F.(2d) 459, have held that federal income taxes actually paid may be deducted as a proper item of expense in a patent accounting. We do not think that L. P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co., 277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800, relied upon by the plaintiff as authority for the denial of the right to deduct taxes is determinative, for whereas the defendant in that case was found guilty of a conscious and deliberate infringement, the defendants in the instant case infringed in good faith. We conclude that the District Court did not err in approving the master's allowance for federal income taxes paid by Pittsburgh, and the error assigned on this issue is not sustained.

### Interest on Investment.

■ The master found as a fact that the amount involved in interest on investment was $358,784.77 and that Pittsburgh was entitled to an allowance for such interest. The plaintiff, conceding that the weight of authority is contra, asks this court to hold that under the circumstances of the case Pittsburgh should be precluded from credit as to this item because the infringement was willful and deliberate. Inasmuch as we sustain the ruling of the court below that the defendants' infringement was not willful and deliberate, we think that this is a case in which to apply the well-established principle that an infringer is entitled to a reduction of profits by allowance of interest on invested capital. Stromberg Motor Devices Co. v. Zenith-Detroit Corporation, supra. We think that the District Court did not err in allowing the defendant to take credit for interest on invested capital, and the error assigned on this issue is not sustained.

### Special Cutting Loss.

The master allowed Pittsburgh credit for $178,545.86 as a so-called special cutting loss. Pittsburgh based its claim on an alleged loss due to the following situation:

Glass is sold by the glass industry in bracket sizes. Duplate required great quantities of 1/8″ plate glass of a certain bracket in its manufacture of laminated glass for automobile purposes. In supplying Duplate orders, Pittsburgh was left with a large quantity of relatively small sizes in strips and brackets up to the 1′ to 2′8″ bracket, which it could not sell to Duplate, for which there was a restricted market and which sold for much less than the larger brackets. Pittsburgh contends that these strips and smaller brackets sold for less than cost and that part of the loss should be allocated to Duplate sales. The plaintiff contends that the strips and small brackets sold for more than cost and that Pittsburgh's claim is for a loss of expected profits rather than for an actual loss. Their respective methods of determining the specific manufacturing cost per square foot of 1/8″ plate glass for the year 1928 is set out below:

| | Pittsburgh | Plaintiff |
|---|---|---|
| Actual Cost | $ .15590 | $ .15590 |
| Income Tax | .02267 | ...... |
| Interest on Investment | .02553 | ...... |
| Patents | .12474 | ...... |
| Specific Cost of 1/8″ plate glass per square foot | $ .32884 | $ .15590 |

The average selling price in 1928 for the strips and smaller brackets was $ .20644 per square foot. If the specific manufacturing cost of 1/8″ plate glass was $ .32884 per square foot, as contended by Pittsburgh, there was a loss; and if $ .15590 per square foot, as contended by the plaintiff, there was a profit. We have already discussed the issues as to allowances for income tax, interest on investment, and patents and have concluded that allowances were properly made for the first two items and improperly made for the last item. We would therefore recalculate the specific manufacturing cost per square foot of 1/8″ plate glass for the year 1928 as follows:

| | |
|---|---|
| Actual Cost | $ .15590 |
| Income Tax | .02267 |
| Interest on Investment | .02553 |
| Patents | ...... |
| Specific Cost of 1/8″ plate glass per square foot | $ .20410 |

With a sale price of $ .20644 per square foot and a manufacturing cost of $ .20410,

there was a slight margin of profit rather than a loss on the sale of strips and smaller brackets for the year 1928. The account must be restated so as to omit the allowance for special cutting loss in 1928, and if, in fact, no loss occurred on the sale of strips and smaller bracket glass during 1929 and the first five months in 1930, the account must be restated as of that period.

The defendants contend that the District Court erred in awarding general damages to the plaintiff; that no damages should have been awarded, inasmuch as the defendants were precluded from examining the plaintiff's books; that the general damages awarded were in fact excessive; that no interest should have been allowed prior to the date of the master's report; and that costs should be apportioned between the plaintiff and the defendants. We shall discuss those contentions in the order mentioned.

*General Damages.*

█ The question as to the power to award general damages must be determined by a construction of Rev.Stat. § 4921, as amended (35 U.S.C.A. § 70). The pertinent portion of this statute provides:

"The several courts vested with jurisdiction of cases arising under the patent laws shall have power to grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable; and upon a decree being rendered in any such case for an infringement the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby, and the court shall assess the same or cause the same to be assessed under its direction. If on the proofs it shall appear that the complainant has suffered damage from the infringement or that the defendant has realized profits therefrom to which the complainant is justly entitled, but that such damages or profits are not susceptible of calculation and determination with reasonable certainty, the court may, on evidence tending to establish the same, in its discretion, receive opinion or expert testimony, which is hereby declared to be competent and admissible, subject to the general rules of evidence applicable to this character of testimony; and upon such evidence and all other evidence in the record the court may adjudge and decree the payment by the de-

fendant to the complainant of a reasonable sum as profits or general damages for the infringement."

This section refers to the right of the owner of a patent to recover profits and damages. "In patent nomenclature what the infringer makes is 'profits,' what the owner of the patent loses by such infringement is 'damages.'" Diamond Stone-Sawing Machine Co. v. Brown (C.C.A.) 166 F. 306. A finding that the infringer made no profits does not preclude an award of damages. Marsh v. Seymour, 97 U.S. 348, 24 L.Ed. 963. Even though the owner of the patent cannot prove his losses specifically, he may nevertheless recover damages on a reasonable royalty basis. Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U.S. 641, 35 S.Ct. 221, 59 L.Ed. 398; Merrell Soule Co. v. Powdered Milk Co. (C.C.A.) 7 F.(2d) 297; United States Frumentum Co. v. Lauhoff (C.C.A.) 216 F. 610.

█ The defendants contend that no award of general damages may be made in the instant case because the plaintiff failed to prove that specific damages were not, in the terms of the statute, "susceptible of calculation and determination with reasonable certainty." They rely upon Wallace & Tiernan Co. v. City of Syracuse (C.C.A.) 45 F.(2d) 693, which holds that proof that the plaintiff's losses cannot be computed is a condition precedent to an award of general damages. That case was distinguished on its facts by the same court in Cincinnati Car Co. v. New York Rapid Transit Corporation, 66 F.(2d) 592. In both the Cincinnati Case, supra, and the instant case, the proofs as to specific damages were inadequate. In the Cincinnati Case, supra, the court allowed an award of general damages. We think that under the circumstances which existed in the instant case the District Court was within its statutory authority to award general damages based on a reasonable royalty. The defendants' contention on this issue is not sustained.

*Examination of Plaintiff's Books.*

█ In the course of the hearing before the master the plaintiff refused to open its books to an accounting. The defendants claim that this affects the entire accounting. The trial court disregarded this contention. We might have deemed this error, had the plaintiff been attempting to recover profits for sales which it did not

make or could not make because the defendants' had taken customers from it. The bill and supplemental bill, however, indicate to us that the plaintiff has not attempted to recover from the defendants damages or profits for its loss of customers. The prayers of the bill and supplemental bill are (1) that the defendant be compelled to account for all strengthened (sic. laminated) glass embodying any of the improvements of the patent which it manufactured and sold etc.; (2) that the defendant be compelled to account for and pay to the plaintiff all profits, gains, and savings by it acquired and the actual damages suffered by the plaintiff from the infringement; (3) that the defendant and its officers be restrained from further violating the plaintiff's patent rights; (4) that the defendant be decreed to pay the costs of suit; (5) that the defendant be restrained from making and selling the product; (6) that the defendant be restrained from further infringing the patent; (7) that a writ of subpœna ad respondendum issue. There is no prayer for an accounting of damages for loss of sales by the plaintiff occasioned by acts of the defendant. We think that inasmuch as the question of damages through the loss of sales was not raised by the pleadings, the matter of an examination of the plaintiff's books by the defendants was not vital to the issues raised by the plaintiff in its two bills. We find no error in the ruling of the court below on this issue.

*Excessive Award.*

 The District Court, acting upon the recommendation of the master, awarded damages based upon a royalty of 10 cents a square foot for all laminated glass manufactured by Duplate. The defendants contend that the royalty is unreasonable and the award excessive. They reason that the rate paid by Ford Motor Company, the only licensee of any importance, should be the maximum measure of the general damages to be imposed upon the defendants. It is our view that no general conclusions may be drawn from the royalty rate paid by Ford Motor Company, since that company undertook an advertising program for Triplex which would have been beyond the financial ability of either Triplex or the average licensee. The defendants also assign error to the master's ruling that Pittsburgh could charge only the manufacturing cost of one-eighth inch glass and not the market price. We agree

with the master, for the reasons well stated by him, that the applicable authority is not Barber. Asphalt Paving Co. v. Standard Asphalt & Rubber Co. (C.C.A.) 30 F. (2d) 281, cited by the defendants. We are inclined to give great weight to the master's fact findings. Armstrong v. Belding Bros. & Co. (C.C.A.) 297 F. 728, certiorari denied 265 U.S. 585, 44 S.Ct. 459, 68 L.Ed. 1192. As was said by Judge Stone in Levin Bros. v. Davis Mfg. Co. (C.C.A.) 72 F.(2d) 163, 165: "Determinations of fact matters by a master which are confirmed by the trial court should not be overthrown on appeal except on the clearest showing of mistake." The defendants' contention of error on this issue is not sustained.

*Interest on Award.*

 The accounting period ran from January 1, 1928, to May 30, 1930, the date when infringement ceased. The District Court computed interest from the end of the infringement. The defendants contend that the interest should have been computed from the date of the master's report, January 12, 1934, when the general damages were first liquidated. We find cases of equal authority both ways. National Brake & Electric Co. v. Christensen (C. C.A.) 38 F.(2d) 721; Rockwood v. General Fire Extinguisher Co. (C.C.A.) 37 F. (2d) 62; National Tube Co. v. Mark (C. C.A.) 10 F.(2d) 430. Our view is that since the case is one in equity, the matter of interest is one within the court's discretion. Merrell Soule Co. v. Powdered Milk Co. (C.C.A.) 7 F.(2d) 297. Whatever moved the master to recommend and the court to decree interest from the time when the infringement ceased does not appear, but we find nothing in the record on which to base a ruling that the court abused its discretion, and its ruling is sustained.

*Costs.*

 The District Court taxed the costs entirely against the defendants. In equity the allowance of costs is within the discretion of the trial court. Ladd v. Tallman (C.C.A.) 59 F.(2d) 732; Ruby Lee Minar, Inc., v. Hammett, 60 App.D.C. 291, 53 F. (2d) 149, certiorari denied 284 U.S. 682, 52 S.Ct. 200, 76 L.Ed. 576; Federal Surety Co. v. A. Bentley & Sons Co. (C.C.A.) 51 F.(2d) 24, 78 A.L.R. 1041. Unless exceptional circumstances exist, as in Jacobs v. Iodent Chemical Co. (C.C.A.) 41 F.(2d)

637, the award will not be disturbed in the absence of an abuse of discretion. No argument has been advanced to persuade us that the court abused its discretion, and its ruling is sustained.

On the plaintiff's appeal, in so far as the decree of the District Court is in accord with the rulings hereinabove set forth, it is affirmed, and in so far as we have found error in the court's rulings, the decree is reversed, with directions to modify the decree in accordance with this opinion. In so far as error is assigned upon the defendants' appeal, the decree is affirmed.